## In re THOMPSON.

### (District Court, N. D. Iowa. C. D. June 18, 1900.)

BANKRUPTCY—WHO SUBJECT TO ADJUDICATION—STOCK FARMER.

In Bankr. Act 1898, § 4b, exempting from liability to adjudication in involuntary bankruptcy "persons engaged chiefly in farming or the tillage of the soil," the latter phrase does not limit the former; and hence a person whose principal occupation is raising cattle and hogs for the market, his farm being devoted chiefly to use as pasture land, and for raising grass, hay, and corn wherewith to feed and fatten the stock, is not subject to be adjudged bankrupt on the petition of his creditors, being a farmer, though not a tiller of the soil.

In Bankruptcy. On petition for adjudication in involuntary bankruptcy.

From the evidence submitted in this case the court finds the facts to be as follows:

(1) That for more than six months next preceding March 2, 1900, the date of the filing of the petition by creditors in this case, the defendant, William J. Thompson, resided in Emmet county, Iowa.

(2) That on the 14th day of December, 1899, the defendant, Thompson, executed a chattel mortgage upon his personal property to the First National Bank of Estherville, Iowa, to secure the sum of $1,500 due the bank, and on the 25th of January, 1900, he executed a second chattel mortgage on his personal property to Joseph Hardie for the sum of $3,000; that when these mortgages were thus executed and delivered the defendant, Thompson, was "insolvent" within the meaning of that term as used and defined in the bankrupt act, and these mortgages were executed and delivered by the defendant, Thompson, with the intent thereby to give a preference to the mortgagees over his other creditors, he being indebted at the time the mortgages were given and at the time the petition in bankruptcy was filed in an amount exceeding $5,000, the number of his creditors being less than 12.

(3) That the petitioning creditors, Joseph J. Steil and the firm of Mugan & Steil, are now, and were when the petition in bankruptcy was filed, creditors of said defendant, Thompson, holding provable claims against him in amounts exceeding $500, which are unsecured.

(4) That with respect to the business and occupation of the defendant, Thompson, the parties have stipulated the facts to be as follows, and the court finds the facts to be: That in 1897 said William James Thompson was farming a half section of land in Emmet county, Iowa; that at that time he had horses and farming machinery for carrying on the farming business on said section; that he was not a cattle raiser; that he had cows sufficient to furnish milk for the uses of the farm; that in 1898 he farmed the half section and about 30 acres of a neighbor's land, and had in addition a quarter section of hay land; that in the fall of 1897 he purchased some cattle,—a small number, about 16 or 17; that in the spring and fall of 1898 he purchased a considerable number of cattle for feeding purposes; that in 1899 he purchased cattle so that he had about 250 head; about 100 of these he fed for beef cattle in the fall of 1899; that he leased an additional quarter section of land for hay land, and a half section for pasture land, for the cattle in the summer of 1899; that out of the land farmed by him there was about 330 acres of the land under plow, 80 acres in corn, the balance in wheat and small grain; that the corn raised on said land was about 80 acres, of which there was fed in fodder about 27 acres, and about 1,350 bushels fed otherwise; that to fatten the first 100 cattle that were being fattened it would take about 8,000 bushels in addition to that which he raised; that of the amount of land farmed by him three quarter sections was in a body, and a quarter section of hay land separate and apart from that, and a half section of grass land separate and apart from that; the amount of grain raised on said place could not have exceeded about $3,000; the cattle were worth about $8,000 or $10,000; in making the

above estimate as to the value of the cattle, it is not intended that he, the said William James Thompson, was worth $10,000 over and above his debts. It is further agreed that the said Thompson had at various times purchased cattle to be fed and fattened upon the lands rented by him in Emmet county, and in payment for said cattle executed a chattel mortgage to the vendors for the full purchase price thereof; that the cattle purchased by him were young cattle, or were what is known as "stockers,"—that is, cattle which were to be fed and fattened for sale upon the markets; that all of said cattle were kept upon the lands rented by Thompson; that the corn raised by Thompson was fed to the said cattle as well as other corn, a considerable portion of which he purchased from the proceeds of small grain sold from said farm land; that all of the hay and grass grown upon said rented lands were fed to said cattle in order to feed them for the markets. It is further agreed that the said Thompson during the times hereinbefore mentioned kept and fed hogs upon the lands rented by him, and sold them in the usual manner upon the markets in Emmet county; that while said hogs were being fattened they were kept upon the lands rented by Thompson, and moved in the spring of 1900 upon the farm of Joe Hardie. It is further agreed that prior to the filing of the petition herein said W. J. Thompson had contracted and sold all of the stock owned by him; that delivery of the same was to be made, one part at a time, prior to the filing of the petition herein, and the balance during the month of May, 1900.

(5) That during the years 1897, 1898, and 1899 the greater part of the manual labor needed in the cultivation of the land occupied by defendant, and in feeding and taking care of the cattle and hogs owned by defendant, was done by hired help, under the control and direction of the defendant, although when necessary the defendant in person aided in doing the plowing and other work on the premises.

(6) That about the 1st of March, 1900, the defendant gave up the possession of the premises described in paragraph 4 of these findings, and removed his belongings, including the cattle and hogs he then had, to premises owned by Joseph Hardie.

D. B. Roberts and Yeoman & O'Connor, for petitioning creditors.
Wright & Nugent and Crim & Penn, for defendant.

SHIRAS, District Judge. The question of law presented by the facts of this case is whether the occupation of the defendant was such as to bring him within the classes of persons who cannot be adjudged to be bankrupts upon the petition of creditors, under the provisions of section 4 of the bankrupt act, which enacts that any natural person, except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, may be adjudged to be an involuntary bankrupt. Upon behalf of the creditors it is contended that the excepted classes are but two in number, to wit, wage-earners and persons engaged in farming by tillage of the soil; or, in other words, that the phrase, "the tillage of the soil," is intended to limit the meaning which would otherwise be given to the description of "a person engaged chiefly in farming." If this had been the intent of congress, the more natural mode of expression would have been to enact that "any natural person, except a wage-earner or a person engaged chiefly in the tillage of the soil," should be excepted from the operation of the act; or if it was desired to use the word "farming," and yet to limit its meaning to mere tillers of the soil, the section would have declared that "any natural person, except a wage-earner or a person engaged chiefly in farming by tilling the soil," might be adjudged a bankrupt. Neither of these forms of expression is used, the declaration being that "any natural person, except a wage-earner, or a person engaged chiefly in farming or the tillage of the soil," may be declared to be bankrupt.

The section provides, therefore, for three classes of persons who are excepted out from the operation of the act, to wit, wage-earners, persons engaged chiefly in farming, and persons engaged chiefly in the tillage of the soil. It may be objected to this construction of the act that one who is engaged chiefly in farming will be engaged in the tillage of the soil, and therefore both descriptions are applicable to only one class of persons; but this is not true in all cases, and while it is true that both descriptions will, in the majority of instances, be applicable to those engaged in farming, yet this is not universally true, and the two descriptions are not strictly synonymous. Thus market gardeners, nurserymen, and the like are engaged in tilling the soil, but they are not engaged in the business of "farming" as that term is now used, and hence the need for including in the act words descriptive of a class who are engaged in tilling the soil, but who are not "farmers" as that word is now used and understood by the community at large.

It is, however, further contended on behalf of the creditors that, whatever may be the proper construction of the act in this particular, the defendant was not engaged chiefly in farming, because he was in fact a dealer in cattle, buying and selling upon the market. The facts show that in 1897 the defendant was farming a half section of land in Emmet county, having the necessary horses and machinery for that purpose; that in the fall of that year he bought some 16 or 17 head of cattle; that in 1898 he farmed the half section, with 30 acres leased of a neighbor, having in addition a quarter section of hay land, and during that year he added to his cattle by purchases from others; that in 1899, in addition to the land farmed in the preceding years, he leased an additional quarter section for hay land, and a half section for pasture land; that he had this year under plow 330 acres, 80 of which was in corn, and the remainder in wheat and small grain, and he had increased his cattle to 250 head, buying what are known as "stockers," and fattening them for the market by feeding to them the grass, hay, and corn produced on the farm, and buying from others the corn needed over and above that produced by defendant. In other words, the facts show that in 1899, and up to the spring of 1900, the defendant was engaged in farming 830 acres of land, of which 330 were under plow, and devoted to the production of corn, wheat, and other small grains, and the remainder was used for hay and pasture lands, and upon this farm the defendant had 250 head of cattle, which he was fattening for sale upon the market. The defendant claims that these facts show that he was engaged chiefly in the business of farming, and the creditors assert that his chief business was that of dealing in cattle. The business of farming includes the fattening of cattle and hogs for the market from the products of the farm, and but one conclusion can be drawn from the facts of this case, and that is that during the years 1897, 1898, and 1899 the defendant was engaged chiefly in the business of farming, and therefore he belongs to a class of persons who are excepted out from the provisions of the bankrupt act, and it must therefore be held, as a conclusion of law, that the defendant cannot be adjudged a bankrupt, and the petition filed against him must be dismissed, the defendant to recover judgment for costs.