---

## In re HOY.

### (District Court, N. D. Iowa, C. D. April 24, 1905.)

#### No. 574.

BANKRUPTCY—PERSONS SUBJECT TO INVOLUNTARY ADJUDICATION—PERSON ENGAGED CHIEFLY IN FARMING.

An alleged bankrupt had for some years conducted a law and collection office; his principal business in connection therewith being the making of collections, and the renting of property for others, and collecting the rents therefor. During the two years prior to the filing of the petition his total earnings from such business did not exceed $450, and were little, if any, above his expenses. He owned a farm of 470 acres, which was improved and rented until about a year prior to the filing of the petition; he being, however, a partner in the stock thereon and consulted in regard to its management. At this time the lease expired, and he thereafter conducted the farm himself, being at the place a considerable portion of the time and moving his family there some time before the commission of the alleged acts of bankruptcy. The gross income from the farm during that season, which was not a favorable one, was about $1,800. His indebtedness arose principally out of his purchase and operation of the farm. *Held*, that from the time of his assuming the conduct of the farm he was engaged chiefly in farming, and was not subject to be adjudged an involuntary bankrupt.

[Ed. Note.—What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

In Bankruptcy. On hearing of creditors' petition in involuntary bankruptcy.

D. W. Telford, Cliggitt, Rule & Keeler, and Kenyon & O'Connor, for petitioning creditors.

Glass, McConlogue & Witwer, Healy Bros. & Kelleher, and Blythe, Markely & Rule, for Hoy and others.

REED, District Judge. August 23, 1904, the First National Bank of Mason City and other creditors of William Hoy filed in this court a petition asking that he be adjudged bankrupt, for that he had, on April 27, 1904, while insolvent, executed mortgages upon all of his real and personal property to others of his creditors, with intent to prefer them over the petitioning creditors. Hoy in due time answered the petition, and alleged that for more than six months last past his chief occupation was that of a farmer, and that during all of that time he was engaged chiefly in farming and the tillage of the soil, and was not, therefore, liable to be adjudged an involuntary bankrupt. Testimony has been taken, and the matter is now submitted upon such testimony and the issues so presented.

That Mr. Hoy was insolvent on April 27, 1904, and had been for some time prior thereto, and that on that date and subsequently

thereto, before the filing of the petition, he made mortgages for a large amount upon all of his real estate and the most of his personal property to certain of his creditors, with intent to prefer them over the petitioning and other creditors, admits of no doubt under the testimony; and the only question to be determined is, can he be adjudged an involuntary bankrupt? Section 4b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]) provides:

"Any natural person, except a wage earner or person engaged chiefly in farming or the tillage of the soil, * * * may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. * * *"

What constitues the chief or principal occupation of a person, where he is engaged in more than one kind of business, is often difficult to determine. It is so largely a question of fact that each case as it arises must be determined upon the particular facts and circumstances thereof. The testimony very clearly shows that on April 27, 1904, when it is alleged that the acts of bankruptcy were committed, Mr. Hoy was, and for some time prior thereto had been, engaged in the business of farming in Cerro Gordo county, in this district, and also in the law and collection business at Mason City, in said county. Hence the question, what was his principal or chief business at the time of the making of the mortgages? At the time of the hearing (November, 1904) he was 64 years old. He was reared and lived upon a farm until 18 years of age. He then taught school for about four years, afterwards read law, and was admitted to the bar in 1878, and soon after engaged in the law and collection business. In 1891 or 1892 he located at Mason City, and for a time did a lucrative business in collections, loaning money, and renting farms for others, and collecting and remitting the rents therefor, had an office upon the ground floor in the business center of the city, and employed two clerks in the conduct of such business. When he located at Mason City he owned five farms, which he rented to others for a cash rental, and he estimated that he was worth from $30,000 to $40,000. In about 1896 his business began to decline, and continued to from that time on. It can hardly be said that he ever did a strictly law business. It was principally collections, loaning of money, and renting of real estate for others. For the years 1903 and 1904 he had only five cases in the district court, one of which was his own for the collection of a fee; and the aggregate of his fees for the four cases, if collected in full, was only $85. For the same period he had some twenty cases before justices of the peace, for which and other collections the aggregate of his fees was about $170, and for the renting of farms and the collection of rents his fees would be nearly $200, if all were collected; so that his entire income from his law and collection business for the years 1903 and 1904, up to the time of the hearing in November, would be about $450. He had, some time prior to July, 1903, given up his office on the ground floor, and rented rooms upon the second floor in another part of the city. For these he was to pay $13 a

month. He sublet or rented desk room in these, and after January, 1904, lodged there nights, a part of the time; and he said that his entire income from this business was insufficient to pay the running expenses of his office.

Shortly after locating at Mason City he bought a tract of land some seven miles from the city. To this he added by other purchases and by building thereon, so that on April 27, 1904, he owned 470 acres of land, fairly well improved, with good buildings thereon, which he valued at $70 per acre, and was incumbered for more than $14,000. This farm he rented in 1898 to a brother-in-law for five years from July 1st, and together they stocked the farm. The brother-in-law lived upon it and carried it on, but at all times consulted with Mr. Hoy in regard to the management of the same. Because of unfavorable seasons and the almost total failures of crops in 1902 and 1903, the income from the farm for those years was less than the expense of running the same. At the expiration of the lease, July 1, 1903, the brother-in-law surrendered to Mr. Hoy all his interest in the live stock, except one horse, and Mr. Hoy assumed the indebtedness incurred in the operation of the farm; and from that time on he assumed the actual control and management of the same himself, rented about 100 acres, and carried on and worked the rest with the aid of hired help—the brother-in-law's family remaining on the farm until March 1, 1904, and boarding Mr. Hoy when there, and the help employed by him to carry on the farm. In January, 1904, he moved his family and all their furniture to the farm, where they have since lived. During the fall and winter of 1903 and 1904 he spent considerable time at his office in Mason City, but at all times communicated by telephone with the farm, directing the help employed thereon, and when the weather was bad he lodged in his office; but after the 1st of March, 1904, or, at best, when seeding time commenced, and during the haying and harvest, he was at the farm a good deal of the time. He also did some business at his office in the way of collections, but this he says was largely in closing or winding up matters that he had had for some time. One of the suits in the district court was commenced in the fall of 1904, and at the time of the hearing was not disposed of. The season of 1904 was better than for the two previous years, but was also an unfavorable one. The gross income of the farm for that year was over $1,800, and there is also grain and feed not disposed of, which is being fed to stock. The expenses of running it are not shown, but Mr. Hoy says they were not nearly that amount. In ordinary years it is estimated that the farm would produce from $2,500 to $3,500.

While it is true that Mr. Hoy has maintained an office at Mason City since he assumed the management of the farm, and has done some law and collection business since that time, the amount thereof and the income therefrom is so small, as compared with the business management, control, and ordinary income from the farm, that it cannot be said to be his principal or chief business. He has not kept up his library for some two or three years, has only partial

137 F.—12

scts of the Iowa Reports, the Northwestern and Northeastern Reporters, and about 25 volumes of miscellaneous text-books, and had offered these for sale prior to 1903; and other circumstances tend to show that before he assumed the exclusive management of the farm his intentions were to give up his law and collection business and devote his entire time to the management of the farm. The great bulk, and perhaps all, of his indebtedness was incurred in the purchase, improvement, and stocking of his farm, and little, if any, was incurred in connection with his law or collection business.

After he had made the mortgages which it is alleged constitute the acts of bankruptcy complained of, some of the petitioning creditors or their attorneys urged him to file a voluntary petition in bankruptcy, and he prepared or caused to be prepared such a petition, apparently with a view of filing it, but finally concluded not to do so. In the petition so prepared he claimed exemption as a lawyer, and stress is laid by the petitioning creditors upon this and some other circumstances appearing in the testimony as showing that he then claimed to be a lawyer. This, however, is not deemed of controlling importance; for the testimony shows that in several of the conversations with attorneys in regard to this he was desirous of knowing which occupation would enable him to claim the larger amount of exemptions, and to some of them he expressed the desire to claim 40 acres of the land as his homestead. But, whatever he may have claimed was his occupation, it must be held to be that which the testimony shows was his chief or principal business.

Without reviewing the testimony further, it must suffice to say that a careful consideration of all thereof leads to the conclusion that for a number of years prior to July 1, 1903, Mr. Hoy was engaged to a considerable extent in farming, and that since that time he has been engaged chiefly therein. It follows, therefore, that he cannot be adjudged an involuntary bankrupt, and that the petition must be dismissed; and it is so ordered.