MORRIS CHUDNOV *vs.* BOARD OF APPEALS OF THE TOWN OF BLOOMFIELD ET AL.

First Judicial District, Hartford, January Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 9th—decided April 6th, 1931.

*Max Adelson,* for the appellant (plaintiff).

*W. Arthur Countryman, Jr.,* for the appellees (defendants).

HINMAN, J. On April 12th, 1929, the town of Bloomfield, under and pursuant to Chapter 242 of the Public Acts of 1925 (now Chapter 29 of the General Statutes), adopted comprehensive zoning regulations, dividing the town into districts, one, in which the appellant's property is located, being designated as "C Residence Zone." The regulations contain a provision (Section II) that "In a residence zone, subject to the provisions of Section VI [which allows the continuance of existing nonconforming uses and buildings devoted thereto and certain changes or extensions], no building or premises shall be used and no building

shall be erected or altered which is arranged, intended or designed to be used except for one or more of the following uses: (1) Dwellings. . . . (8) Farming, truck gardening, nurseries or greenhouses." Other provisions deemed germane to the present discussion will be mentioned hereafter.

Subsequent to the enactment of these regulations the appellant made application for a permit for the erection, on his land, of a dwelling house, and a poultry house for the accommodation of eight hundred to one thousand hens. The building inspector refused to grant a permit for the proposed poultry house and was sustained, after hearing, by the board of appeals, the regulation above quoted being interpreted as precluding the raising of poultry as a business, unconnected with other farming activities, as proposed by the appellant, in a residence zone.

On the appeal from this ruling the Court of Common Pleas, upon the facts found, some of which are mentioned in the course of this opinion, held that the raising of chickens, as proposed, did not constitute "farming" within the meaning of the regulation above quoted, and that therefore the appellant was not entitled to a permit for the erection of the poultry house, that the action of the board of appeals was not illegal, arbitrary, or unreasonable, and that the regulation in question is constitutional and valid. Judgment was rendered dismissing the appeal. The appeal to this court attacks these several conclusions.

The first question presented is whether, as the appellant claims, the use which he contemplates making of his land constitutes farming and therefore is permissible in a residence zone under subsection (8) of Section II. It is apparent, upon examination of the available definitions of "farming," that the dominant and distinguishing characteristic of this occu-

pation, in both the popular and the legal sense of the term, is the cultivation of the soil for the production of crops therefrom. Corpus Juris (Vol. 25, p. 674) defines it as "the business of cultivating land, or employing it for the purposes of husbandry; the cultivation and fertilization of the soil, as well as caring for and harvesting the crops." Most of the judicial definitions have been evolved by the Federal courts in the course of determination of the scope, and application to varying sets of facts, of the exemption, under the bankruptcy acts, from adjudication as an involuntary bankrupt, of "a person engaged chiefly in farming or the tillage of the soil." Both in this and other connections a farm has been held to denote a considerable tract of land devoted, at least in part, to cultivation of crops and produce, with suitable buildings. *Kendall* v. *Miller*, 47 How. Prac. (N. Y.) 446, 448; *In re Drake*, 114 Fed. 229, 231; 2 Bouvier (3d Rev.) 1190; 3 Words & Phrases (1st Series) 2697. "A farm is, both by the standards and in common acceptation, defined to be a body of land . . . devoted to agriculture, either to the raising of crops, or pasture, or both." *People ex rel. Rogers* v. *Caldwell*, 142 Ill. 434, 441, 32 N. E. 691, 693.

It is generally recognized, however, that stock-raising, dairying, and kindred activities are legitimately to be considered as a part of and included within farming when carried on in connection with and incidental and subordinate to tillage of the soil. "In the vast majority of cases the keeping of a dairy is a mere incident, or, at most, a branch, of farming business; and in such case it is a misdescription to classify the man as a dairyman, and not as a farmer. The general name of the latter includes the former. . . . Doubtless a man might be a dairyman, and not a farmer, as if he were to build a barn, buy a herd of cows, and

buy from others the grain and other forage to feed them, and sell their milk or other products; and if this was his principal business he would not be exempt from proceedings in bankruptcy because he was a farmer. But if, while farming, he establishes, as one of the departments of his industry, a dairy to utilize the products of his farm and convert them to profitable uses, he is none the less a farmer." *Gregg* v. *Mitchell* (C. C. A.) 166 Fed. 725, 727, 20 L. R. A. (N. S.) 148. In *In re Thompson,* 102 Fed. 287, one who used an extensive tract of land for production of small grains and hay and for pasture, and had, thereon, a large number of cattle which he fattened for sale by feeding to them the products of his land, buying from others what was needed over and above that produced by himself, was held to be engaged in farming. The general trend of decisions is to this effect. *Hart-Parr Co.* v. *Barkley* (C. C. A.) 231 Fed. 913; *Wulbern* v. *Drake* (C. C. A.) 120 Fed. 493, 114 Fed. 229; *In re Brown,* 251 Fed. 365; *In re Hoy,* 137 Fed. 175; *Rise* v. *Bordner* (D. C.) 140 Fed. 566; *Flickinger* v. *First National Bank* (C. C. A.) 145 Fed. 162; note, 20 L. R. A. (N. S.) 148; *Dorsett* v. *Watkins,* 59 Okl. 198, 158 Pac. 608, 9 A. L. R. 278; 3 Words & Phrases (3d Series) p. 550.

This conception of the significance and scope of the term "farming" appears to be practical and fair and, as well, consistent with the recognized and established nature and purpose of zoning regulations—to "promote the morals, health, safety, welfare and prosperity of the community for which they were adopted and aid in its community development." *State* v. *Hillman,* 110 Conn. 92, 107, 147 Atl. 294. They are to be made "with a view to conserving the value of buildings and encouraging the most appropriate use of land." General Statutes, § 424. "Zoning does no more

than apply the rules of good housekeeping to public affairs. It keeps the kitchen stove out of the parlor, the bookcase out of the pantry and the dinner table out of the bedroom." Metzenbaum, Law of Zoning, p. 6.

It is apparent that, as a general rule, the limitation of such activities as the raising or keeping of livestock or poultry to subservience to and an incident of the main characteristic of the occupation of farming—the cultivation and production of crops—will obviate, in large measure, or reasonably ameliorate the results, detrimental to the paramount interests and uses of a community or neighborhood of a residential character, which are to be anticipated from such activities when independently conducted. A reasonable coincidence between the quantity of the products of a tract of land and the stock kept thereon involves and assures a reasonable limitation and regulation of conditions injuriously affecting the appropriate use and occupation of adjacent and neighboring properties for residential purposes. For example, as in *Gregg* v. *Mitchell, supra,* the keeping of cattle in such numbers, in relation to the size and productivity of the owner's land, as to render such keeping merely an incident of the general operation of the farm, by dissemination of the livestock in pastures, natural distance and comparative isolation of the barns, stables and yards from neighboring homes, and other similar considerations, obviously would be much less objectionable and inconsistent with the general purposes and uses of a residential community than the keeping of a like number of cattle upon a lot only large enough to accommodate the stables and their appurtenances and in corresponding relations of proximity to residence properties of others. The same distinction obtains between the maintenance of a poultry house of the size, and a flock

of the number, contemplated by the appellant, upon a farm of such area and characteristics as to make the poultry operations incidental to the conduct of the farm, as a whole, and the same activities carried on, as proposed, as a sole or principal business on a lot alleged, in the appeal, to be about two hundred feet wide in front and one hundred and thirty-two feet in the rear, and found to contain less than three acres, an area manifestly inadequate and unadapted to farming in any accepted sense of that term.

The limitations inherent in the term "farming" as employed in these and many other zoning ordinances and regulations are indicated and emphasized by the enumeration, with it, of other permitted uses. Here, as in most, are mentioned "truck gardening, nurseries or greenhouses" all of which, in a degree, involve the tillage of the soil and production of crops and in that respect are not inappropriate to farming in the broad sense. That it is deemed necessary to specify these enterprises as permitted negatives an intent that others less obviously related to "farming" are to be allowed not only in connection with and incidental to recognized farming operations but also as a distinct and independent business and use.

Under this and similar provisions of zoning ordinances, as in the bankruptcy cases to which we have referred, the application of the test—whether the proposed use is fairly to be considered as incidental to farming operations and therefore permissible, or, on the other hand, an independent or dominant enterprise, and as such excluded—may often present and depend upon questions of fact, or involve or be open to a legal exercise of discretion by the administrative officials and the board of appeals. No such doubtful question of fact is presented by the instant case, however. The situation of the appellant as to quantity of

land and proposed buildings indicates, and the finding states, that he intends to carry on the raising of chickens as a business and a means of livelihood; no ground is afforded for a claim that he proposes to engage in "farming," within the meaning of any admissible definition or conception of the term, and to make of his poultry business only an incident thereof. This disposes of the claim that the use proposed is one permitted by the regulation, as within the designation of "farming" and that, therefore, the appellant had an absolute right to erect the poultry house as proposed.

The record indicates that the plaintiff, in resorting to the board of appeals, relied solely on the contentions just stated, without any attempt to invoke the power of that board, under subsection 6 of Section XIV, to "vary any requirement of these regulations in harmony with its general purpose and intent, so that substantial justice may be done . . . in instances where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of these regulations." However, were the exercise of this discretionary function involved, we would be unable to hold, on the facts before us, that the denial of the plaintiff's application was "arbitrary, illegal, or unreasonable," as alleged on this appeal. The potential effect upon the senses and comfort of dwellers in the vicinity, and consequently upon the development and use of that territory for residential purposes, of the accommodation of one thousand hens upon premises of the size and situation of the plaintiff's as revealed by the finding, supplemented by facts of which we may take judicial notice, is unmistakably inconsistent with the legitimate aim of this or any ordinary zoning act. The fact that four similar lots in the same

vicinity are now being used for raising poultry, under permits issued prior to the adoption of the zoning regulations, and one under permit issued since such adoption is by no means conclusive or indicative of a right in the appellant, either in law or in reason, to a similar permit. Rights vested under the prior permits were not abrogated by the adoption of the regulations. It appears from the finding that, in the judgment of the board of appeals, the single subsequent permit was mistakenly granted by the building inspector, and no substantial identity of situation and conditions between the lot as to which it was issued and that of the appellant is established by the finding.

A further claim seems to have been made in this court for the first time that the appeal could and should have been sustained by the board of appeals under the power granted it to "permit the extension of a nonconforming use or building upon the lot occupied by such use or building at the time of the passage of these regulations." Subsection 3, Section XIV. No resort was made to this remedy in the original appeal and, if it had been, an attempt to extend its provisions to apply as between separate lots originally part of a common tract but now held and occupied by different owners would have been both novel and fruitless.

The final point urged is that if, as we have held, the use proposed by the appellant does not constitute "farming" and therefore is not permitted in the residence zones, the regulations are unconstitutional. The appellant having recognized and utilized the regulations by proceeding under them, it is not open to him to attack them, in this action, as unconstitutional and invalid. *Lathrop* v. *Norwich*, 111 Conn. 616, 626, 151 Atl. 183; *Rindge* v. *Holbrook*, 111 Conn. 72, 149

Atl. 231; Holley v. Sunderland, 110 Conn. 80, 147 Atl. 300.

However, we do not share the apprehension which the appellant asserts as to the extent of the effect of the regulations upon the industry of poultry raising in Bloomfield. As an incident of farming, in the sense we have explained, it remains unaffected; again, as we have seen, the applicability of the regulation depends so largely upon the facts of individual cases as to leave ample room for such adaptations as may fairly and reasonably appertain to each concrete situation; also, the board of appeals is given, by Section XIV, especially subsection 6, above referred to, the power and function to ameliorate, so far as consistent with the spirit and purpose of the zoning regulations, any unnecessary hardships which, owing to special conditions, would result from a literal enforcement of their provisions. *Lathrop* v. *Norwich, supra,* 620. Beyond this, relief from action by the building inspector or the board of appeals which is claimed to be arbitrary or so unreasonable as to be an abuse of discretion is available through appeal to the courts. *DeFlumeri* v. *Sunderland,* 109 Conn. 583, 145 Atl. 48; *Holley* v. *Sunderland, supra.* These several considerations satisfy us that one who desires to engage in poultry raising, not only as an adjunct of general farming, but also as a specific business, will not be likely. to be precluded therefrom, provided the location and the conditions under which it is to be conducted are not such as to be inimical to the prescribed, and present or reasonably to be anticipated uses of the adjacent and neighboring premises which may be affected thereby, and the interests of the community in general as sought to be safeguarded and promoted by zoning regulations. Baker, Legal Aspects of Zoning, p. 76 *et seq.*

There is no error.

In this opinion MALTBIE, C. J., HAINES and BANKS, J., concurred.

AVERY, J. (dissenting). The Connecticut State Register and Manual, 1930, page 428, thus describes the town of Bloomfield: "Incorporated May, 1835; taken from Windsor. Area, 17,436 acres. Voting districts, 2. Children between the ages of 4 and 16, September, 1929, 915. Grand list, $6,155,429. Net indebtedness, 1929, $173,518.74. Rate of taxation, 22 mills. Principal industry, agriculture."

From the finding, it appears that the appellant owns a tract of 2.8 acres on School Street, known as lot No. 9 on "Survey of Ely Alfred et al." This survey comprises nine tracts, each being between two and four acres in extent. Five of these tracts are now being used for the raising of poultry. All of the tracts so used are located at least eight hundred feet away from the appellant's lot. Across the street from the appellant's lot is a farm of one hundred and five acres. The land surrounding appellant's property is undeveloped.

On April 12th, 1929, the town of Bloomfield adopted building zone regulations. Section II, Par. 8, thereof provides as follows: "In a residence zone, no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used except for one or more of the following uses: . . . (8) Farming, truck gardening, nurseries or greenhouses." The property of the appellant lies in "C Residence zone" and is subject to the foregoing zoning ordinance. Subsequent to the enactment of the building zone regulation, the appellant made application for the erection of a dwelling-house and a hen house on his land, which latter was to set back three hundred feet from the street line and was for the accommodation of between eight

hundred and one thousand hens. The dwelling-house was an ordinary two-story dwelling-house. The building inspector granted permission for the erection of the dwelling-house but refused a permit for the proposed hen house, and referred the appellant to the zoning board of appeals which, after hearing, refused the appellant's request, and sustained the building inspector. The finding of the trial court, which appears to have been accepted by the majority, that the town of Bloomfield has been an agricultural town, but a decided change in its character to residential purposes has occurred, is without force in view of the previous finding of the court that the land surrounding the appellant is undeveloped; and, though zoned for residential purposes, efforts to sell building lots near the appellant's property for a period of about fifteen years have resulted in the sale of but one lot. Evidently, the change from agricultural to residential purposes is gradual, to say the least.

Webster's Elementary School Dictionary, used as a textbook in most of the graded schools in this State, defines a farm as follows: "A tract of land devoted to agriculture;—often qualified by a preceding noun; as, a chicken farm." Webster's New International Dictionary defines a farm as "any tract of land (whether consisting of one or more parcels) devoted to agricultural purposes, including the production of crops and generally of animals. . . . Hence a plot or tract of land devoted to the raising of domestic or other animals; as, a chicken farm." *Porter* v. *Yakima County*, 77 Wash. 299, 137 Pac. 466, 467. "In short a tract may be a farm without the aid of a plough." It is not material whether the farm is large or small, isolated or made up of many tracts. *In re Drake*, 114 Fed. 229, 231.

The majority opinion finds its chief support in the

case of *Gregg* v. *Mitchell*, 166 Fed. 725, 727. The question there decided was that a person does not cease to be "engaged principally in farming or the tillage of the soil," within the meaning of the National Bankruptcy Act, because he established a dairy as one of the branches of his industry. In the course of its reasoning, the court made the remarks quoted in the majority opinion, which were *obiter* so far as the decision of the case was concerned.

A zoning ordinance of this character is in derogation to the rights of property and should be construed by the court in favor of the landowner. The natural and general understanding of the word "farming" coincides with the definition of Webster and would designate as a chicken farm a tract of land with suitable buildings devoted to the business of breeding, raising and preparing poultry of that kind for market. No case has been found where any court anywhere has held that the raising of poultry under such circumstances does not constitute a farming operation. The construction placed upon the ordinance by the majority, in my opinion, is not only unwarranted in law, but works a great hardship on the appellant who is deprived thereby of an opportunity to use his property in a lawful way to obtain a livelihood.

It appears from the finding that subsequent to the enactment of the building zone regulations, the inspector has granted one permit for the erection of a poultry house on the same tract, of which appellant's lot is a portion, to be used for the same purpose as that for which the appellant wishes to use his own lot. It is a rural section with but one house and that a farm within a fifth of a mile. We have, then, a situation where on a development containing nine tracts of land of substantially equal size, five are now being used for the raising of poultry, one by a permit

granted since the zoning ordinance took effect. A holding under these circumstances that the appellant cannot utilize his land for the same business is arbitrary, unreasonable and an unconstitutional interference with his property rights. "Where a statute or ordinance interferes with the use and control of property without rational relation to public safety, health, morals, or general welfare, or is a palpable invasion of rights secured by the fundamental law, the enactment cannot be sustained as a legitimate exercise of police powers"; *White's Appeal*, 287 Pa. St. 259, 268, 134 Atl. 409, 413; or, as stated by Mr. Justice Holmes, "the general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. . . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393, 415, 416, 43 Sup. Ct. 158.

In my opinion the judgment should be reversed.