Anton KAMMERLOCHER and Ilene L. Kammerlocher, Appellants,

v.

The CITY OF NORMAN, Oklahoma, a municipal corporation, and Glen Webster, Building Inspector, Appellees.

No. 43184.

Supreme Court of Oklahoma.

March 27, 1973.

Rehearing Denied May 8, 1973.

Sam F. Whitlock, Norman, for appellants.

Fielding D. Haas, Norman, for appellees.

IRWIN, Justice:

Appellants, Anton Kammerlocher and Ilene L. Kammerlocher are husband and wife. Since the husband is the principal litigant, we will refer to him as plaintiff.

Plaintiff is the owner of a lot in the City of Norman (city) which is subject to that city's Ordinance No. 1590. The zoning ordinance was adopted after certain landowners in the area made application to have their property rezoned for commercial purposes. One of the provisions of that ordinance prescribes that a "30 foot wide service alley shall be provided along the rear 30 feet of the commercially zoned area for the purpose of truck loading and unloading, utilities and garbage service."

Plaintiff commenced this action against city and its building inspector to perpetually enjoin the enforcement of the above proviso against his lot. The trial court made extensive findings of fact and conclusions of law and determined that the ordinance was valid and that plaintiff's lot was subject to the 30 foot alley easement and rendered judgment for defendants. Plaintiff appealed.

The relief sought is an injunction against the enforcement of an alleged invalid, unreasonable and capricious ordinance which will allegedly cause plaintiff irreparable harm and injury. The case as presented is clearly, in form and substance, an action of equitable cognizance, and the judgment of the trial court will not be disturbed by this Court on appeal unless it is clearly against the weight of the evidence or contrary to law. McNair v. City of Oklahoma City, Okl.Sup., 490 P.2d 1364.

The record discloses that after the rezoning ordinance was adopted on September 8, 1964, plaintiff, then a resident of Amarillo, Texas, came to Norman on September 15, 1964, to seek a location for an animal hospital. He looked over several sites and finally decided on the lot in question. He contacted a Mr. Abercrombie, the representative of the owner-seller, and thereafter signed a contract of purchase. This contract, inter alia, provided that the property was subject to building restrictions and easements of record, and that the contract was contingent upon the City of Norman issuing a building permit by October 1, 1964.

Abercrombie applied for a building permit for plaintiff on October 1, 1964, but it was denied because the proposed plat plan made no allowance for the various easements. Since the building permit had not been issued by October 1, 1964, plaintiff and Abercrombie agreed on an extension of the purchase contract. Plaintiff was advised of the general easement requirements, but was not specifically advised of the 30 foot alley easement. However, he authorized Abercrombie to continue his efforts to obtain the building permit. Plaintiff consummated the purchase of the property on November 6, 1964, after the building permit had been issued. The amended plat plan filed by Abercrombie, which was approved, provided for the easements required by the ordinance. The details of the amended plat plan were not transmitted to plaintiff.

The rezoning ordinance was not published in the newspapers nor incorporated in the Code of the City of Norman by title or otherwise, and the 30 foot alley easement was not shown in the records of Cleveland County at the time plaintiff negotiated for the purchase and acquired title to the property.

Abercrombie contracted to build the animal hospital for plaintiff. Construction was commenced and plaintiff visited the site several times when, before Christmas, 1964, he observed and recognized for the first time the 30 foot alley easement. He thereafter continued and completed the construction of the animal hospital.

Approximately three years later plaintiff applied for a building permit for an expansion of his building which would encroach upon the 30 foot alley easement. This application was denied and plaintiff instituted these proceedings for injunctive relief against the enforcement of the 30 foot alley easement.

Plaintiff first contends that the 30 foot easement for a service alley constitutes a taking of private property for a public use without compensation and is unconstitutional and void.

In Ayres v. City Council of City of Los Angeles (1949), Cal.Sup., 207 P.2d 1, Ayres owned a tract of land in a subdivision and brought an action against the City Council to approve a proposed subdivision map without certain conditions that had been imposed by the planning commission. The conditions imposed by the planning commission and approved by the City Council and the trial court were (1) a ten foot strip abutting a boulevard be dedicated for its widening, (2) an additional ten foot strip along the rear of the lots be dedicated to the planting of shrubbery for the purpose of preventing direct ingress and egress to the boulevard, (3) extension of a street dedicated to a width of eighty instead of sixty feet, and (4) an extension of a street be dedicated for street use for the purpose of eliminating it as a traffic hazard.

Ayres challenged the imposed conditions on the grounds they were not expressly provided for by the Subdivision Property Act nor by City Ordinance; they bore no reasonable relationship to the protection of the public welfare, safety or general welfare; and amounted to a taking of private property for public use without compensation.

In affirming the judgment of the trial court's approval of the conditions, the Supreme Court of California said the creation of the proposed uses of the subdivision would give rise to traffic and other conditions necessitating the widening of the boulevard; the widening was necessary for and would benefit the lot owners; and the requirement was reasonably related to the protection of the public health, safety and general welfare.

In connection with the imposition by the zoning board of the ten foot strip along the rear of the lots to be used for planting shrubbery the California Court said the creation of the subdivision necessitated the restricted use to confine ingress and egress and to provide safety islands for pedestrians, and that this imposition was reasonably related to the protection of the public health, safety and general welfare.

In considering Ayres' contention that the impositions amounted to taking private property for public use without compensation, the Court said: "A sufficient answer is that the proceeding here involved is not one in eminent domain nor is the city seeking to exercise that power. It is the petitioner (Ayres) who is seeking to acquire the advantages of lot division and upon him rests the duty of compliance with reasonable conditions for design, dedication, improvement and restrictive use of the land so as to conform to the safety and general welfare of the lot owners in the subdivision and of the public."

The California Court cited Mansfield & Swett v. Town of West Orange, 120 N.J.L. 145, 198 A. 225, as recognizing the distinction between the exercise of the sovereign power of eminent domain and the non-

compensatory nature of reasonable restrictions in respect to private interests when they must yield to the good of the community. The Court also cited Ridgefield Land Co. v. City of Detroit, 241 Mich. 468, 217 N.W. 58; and Newton v. American Sec. Co., 201 Ark. 943, 148 S.W.2d 311, as authority for the proposition that the requirement for the dedication of land to the widening of existing streets was not a compulsory taking for public use, but that where it is a condition reasonably related to increased traffic and other needs of the proposed subdivision it is voluntary in theory and not contrary to constitutional concepts.

In Hudson Oil Company of Missouri v. City of Wichita, 193 Kan. 623, 396 P.2d 271, the Court held that the governing body of a city may, as a prerequisite to the approval of a small plat in a highly congested area, require the dedication of a ten foot strip along one side of the tract for a service or frontage street, where necessary to maintain uniformity.

In Gorieb v. Fox, 274 U.S. 603, 47 S. Ct. 675, 71 L.Ed. 1228, 53 A.L.R. 1210, the Supreme Court of the United States, in considering the contention that a municipal ordinance which compelled an owner to set his proposed building back from the street line of his lot deprived him of his property without due process of law said: "It is hard to see any controlling difference between regulations which require the lot owner to leave open areas at the sides and rear of his house and limit the extent of his use of space above his lot and a regulation which requires him to set his building a reasonable distance back from the street. Each interferes in the same way, if not to the same extent, with the owner's general right of dominion over his property." In its concluding paragraph, the Court said: "Since upon consideration we are unable to say that the ordinance under review is 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare,' we are bound to sustain it as constitutional. Eu-clid v. Ambler Realty Co., supra, [272 U.S. 365, 71 L.Ed. 303, 47 S.Ct. 114, 54 A.L.R. 1016.]"

Our Legislature has conferred upon the legislative body of cities and incorporated villages the power to regulate and restrict the height, number of stories, and the size of buildings and other structures, the percentage of a lot that may be occupied, the size of yards and open spaces, and the location and use of buildings, structures and land for trade, industry, residence or other purposes for the purpose of promoting health, safety, morals or the general welfare of the community. 11 O.S. 1970, § 401.

In Beveridge v. Harper & Turner Oil Trust, 168 Okl. 609, 35 P.2d 435, we held that the right of an individual to use his property as he pleases is a qualified as distinguished from an absolute right; and it is at all times subject to the authority of the state, under its police power, to fairly and reasonably restrict the use of such property to the end that the public health, safety and welfare will be promoted.

In McNair v. City of Oklahoma City (1971), Okl., 490 P.2d 1364, we said that the action of a municipality in enacting, amending or refusing to amend a zoning ordinance, is a legislative function; and we applied the rule that when the validity of a municipal zoning ordinance is challenged, it is the duty of the court to determine whether the passage of such ordinance was an arbitrary, unreasonable and capricious exercise of the police power.

Inherent in the trial court's conclusion in the case at bar that Ordinance No. 1590, was a valid ordinance is a finding that the passage of such ordinance was for the purpose of promoting the health, safety and general welfare of the community and such passage was not arbitrary, unreasonable and a capricious exercise of police power. Plaintiff's predecessors in title, together with other landowners, sought to have their property rezoned for commercial purposes and the rezoning inured to their benefit. In order to have the property re-

zoned, the duty rested upon them to comply with reasonable conditions and restrictions. The trial court's determination that the 30 foot alley easement for truck loading and unloading, utilities and garbage in the rezoning ordinance was not an arbitrary and unreasonable condition or capricious exercise of the police power, is not against the clear weight of the evidence. We hold the 30 foot alley easement contained in the ordinance was valid and did not constitute the taking of private property for a public use without compensation.

■ Plaintiff next contends that the 30 foot alley easement is unenforceable against him as an innocent, bona fide purchaser for value without notice, and the prior acquired knowledge of Abercrombie (knowledge of the 30 foot alley easement) which was undisclosed to him by Abercrombie, and who had a secret adverse interest, and who also was acting as a dual agent for the seller, was not imputable to him.

In its conclusions of law the trial court found that Abercrombie was at all times pertinent to this case appearing as the agent of the owner-seller in connection with the negotiations leading up to the contract of purchase; that Abercrombie was a dual agent for both the plaintiff (buyer), and the seller from September 15, 1964 to October 1, 1964, during which time he was working for both of them to implement the consummation of the sale by procuring a building permit for plaintiff; that Abercrombie knew of the 30 foot alley easement while the agent of the seller and his information was so precise, definite and important that it must have been in his mind while engaged in the transaction for plaintiff, and he was at liberty to disclose such information to plaintiff; that Abercrombie's knowledge, irrespective of when it was obtained, relevant to his work for plaintiff, is imputed to and binding on him even though not communicated to him by Abercrombie; that all the acts of Abercrombie in preparing the plat plan for the building permit for plaintiff and the drafting of specifications and construction of the animal hospital were performed as plaintiff's agent; and in view of the actual notice imputed to plaintiff through this agent Abercrombie, plaintiff had constructive notice of the 30 foot easement.

In Newsom v. Watson, 198 Okl. 220, 177 P.2d 109, we held:

"The knowledge of an agent is imputable to the principal in connection with any transaction conducted by or participated in by the agent in behalf of the principal.

"Where a principal knows that his agent is also acting for the party adversely interested in the transaction, and yet consents to let him act as his agent, the principal is estopped from denying notice and knowledge which the agent has during the transaction."

Under the facts presented we find it unnecessary to consider or determine if Abercrombie's knowledge of the 30 foot alley easement was imputable to his principal, the plaintiff, if Abercrombie intentionally concealed from plaintiff the existence of the easement for his own benefit to plaintiff's detriment. The record will not justify a finding that Abercrombie intentionally withheld any information from plaintiff for his own benefit or to plaintiff's detriment.

In our opinion the trial court's conclusion that the acts of Abercrombie in drawing the plat plan for the building permit, obtaining the permit, and drafting the specifications and construction of the building were performed as plaintiff's agent, is not against the clear weight of the evidence. We are also of the opinion that the trial court's conclusions that Abercrombie's knowledge of the 30 foot easement was imputable to plaintiff, and that plaintiff is not entitled to any relief on the grounds that he was an innocent, bona fide purchaser for value without notice.

In its conclusions of law the trial court also found that plaintiff's knowledge of the 30 foot easement and the subsequent completion of the animal hospital without com-

plaint, and first challenging the validity of the ordinance in connection with the proposed expansion of the building some three years later constitute laches and plaintiff is estopped to claim lack of personal notice as a defense to the validity of the rezoning ordinance as it now affects his property.

Relative to this conclusion, plaintiff contends that city abandoned the plan filed in connection with the rezoning by permitting other structures to encroach upon the 30 foot alley easement, and he is not estopped nor guilty of laches in completing his building after obtaining knowledge of the asserted easement.

■ The record will not justify a finding that city abandoned the 30 foot alley easement requirement by permitting other structures to encroach upon said easement. Also, since we have held that the knowledge of the existence of the easement by Abercrombie is imputable to plaintiff, plaintiff's contention that the trial court erred in its conclusion that he was guilty of laches and estopped to claim any lack of personal notice of the easement as a defense becomes immaterial.

Plaintiff asserts several specifications of error which will be considered together. He argues the ordinance is void because the title is defective; that the detailed requirements in the body of the ordinance are not expressed in the title; and that he was entitled to rely upon the land records of the county to disclose the service alley and cites "Simplification of Land Titles" (16 O.S. 1971, Secs. 61–66) and the "Marketable Record Title" (16 O.S. 1971, Secs. 71–81).

Plaintiff finished the construction of his building after he had knowledge of the 30 foot alley easement and acquiesced in the easement for almost three years prior to the time he challenged its validity. Other property owners acquiesced in the easement which inured to plaintiff's benefit. In Chudnov v. Board of Appeals of the Town of Bloomfield, 113 Conn. 49, 154 A. 161, the Connecticut Court held that an applicant having recognized and utilized a

zoning ordinance may not challenge its invalidity. In Wall v. Parrot Silver & Copper Company, 244 U.S. 407, 37 S.Ct. 609, 61 L.Ed. 1229, the United States Supreme Court said that one may not claim the benefit of a statute and later assail its validity and "there is no sanctity in such a claim of constitutional right as prevents its being waived as any other claim of right may be."

Judgment affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and HODGES, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.

BERRY, J., concurs in result.