THE STATE v. C. A. KENNERLY and GEORGE W. PATTERSON.

*Liquor Dealer—Tax—Statute—Products of Farm.*

1. The exception in the Revenue Act (Ch. 135, §31, Laws 1887,) of the " products of the farm," from special license tax on liquor dealers, includes only those products which are the result of the cultivation of the soil. Tolls received from a mill erected on the farm are not such " products."

CRIMINAL ACTION, tried before *Clark, Judge,* at Fall Term, 1887, of CABARRUS Superior Court.

Upon the special verdict the Court, being of opinion that the defendants were guilty, pronounced judgment against them, from which they appealed.

The facts are stated in the opinion.

42

*The Attorney General* and *Messrs. T. C. Fuller, Geo. H. Snow* and *E. C. Smith,* for the State.

*Messrs. C. M. Busbee* and *Jno. Devereux, Jr.,* for the defendants.

MERRIMON, J.   The defendants are indicted for selling spirituous liquors " in quantities of one quart and less than five gallons," without a license, the same not being " the products of his (their) own farm."

The statute (Acts 1887, Ch. 135, §31,) provides among other things, as follows:   "Every person, company or firm, for selling spirituous, vinous or malt liquors or medicated bitters, shall pay a license tax semi-annually in advance, on the first day of January and July, as follows.   *   *   *   Second, for selling in quanties of one quart and less than five gallons, twenty-five dollars for each six months," &c.   "Nothing in this section contained shall prevent any person selling wines of his own manufacture at the place of manufacture, or any person from selling spirits or wines, *the products of his own farm,* in quantities of not less than one quart."

It appears from the special verdict that the defendants sold to the person named in the indictment one quart of spirituous liquors, neither of them having a license to sell such liquors.   It appears further, that the defendant Kennerly was in the employment of the other defendant as his clerk, and sold the spirits with the knowledge and consent of the former.   It likewise further appears, that the spirits so sold were manufactured out of " the products of" the farm of the said Patterson " *and* out of the said Patterson's *toll* from his mill, located on said last mentioned farm of said Patterson."

The spirits sold were of the tolls—the grain earned—of the mill, as well as the products of the farm mentioned, and the defendants could not lawfully sell the same without a license, unless such toll should be treated as part of the pro-

ducts of the farm, as the counsel for the defendants contend it should be.

The words of the statute to be interpreted are " *the products of his own farm.*"    Now, a farm, the farm, his farm, in the ordinary sense, implies the land cultivated—used in some way—for the purposes of production by the owner thereof, or some other person having a temporary estate or interest therein, and land, whether covered by forest or not, adjoining or near and made subservient thereto, and used in aid thereof, for the purposes of producing grain—such as wheat, indian corn, rye, barley, cotton, fruits, hay, vegetables, and the like, and perhaps live stock, such as cattle, sheep, horses, swine, and the like, by transmutation, directly or indirectly, brought about by the cultivation of the soil.    Bur. Law Dic.—Farm.

" The products " of the farm are such things as are so produced by labor or otherwise, and of spontaneous growth, and " the products of his own farm " are such as are produced by him who so owns and cultivates a farm.    A mill situate on a farm is not a product of it—it is not the result of the cultivation of the soil—it is not essential to it—it is a structure enclosing machinery for the purposes of manufacture, transformation, not transmutation, and its earnings—the tolls— are not products of the owner's farm, but the products of the farms of other people, and the clause in question clearly does not therefore embrace them.    A grist mill is no more a part of the farm than a cotton mill, a cotton gin, a blacksmith-shop, or other structure or machinery erected on it for the purposes of manufacture.    The earnings of such things are not of the product of the farm, in the sense of the statute.

The purpose of the statutory provision in question is not to encourage millers, but to afford every farmer the largest opportunity to sell the corn, wheat, rye, and the like, produced on his own farm, by turning it into an article of ready sale at a better price.    He may sell spirituous liquors man-

ufactured out of "the products of his own farm"—the rye, wheat and indian corn produced by him, without paying a tax for license to do so; beyond that, he must pay a license tax.    We cannot hesitate to hold that such is the meaning of the statute.

There is no error, and the judgment must be affirmed.

Affirmed.