TOWN OF LINCOLN *vs.* WALTER F. MURPHY & another.

Middlesex.    April 9, 1943. — May 24, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Zoning. Farm. Piggery. Lincoln. Public Officer. Equity Pleading and Practice,* Decree. *Words,* "Farm."

A fifty-five acre tract of land in Lincoln, which, except for a negligible amount of cultivation, was used solely for the raising of over two thousand hogs whose feed was garbage brought from a distance, was not used as a farm within a zoning by-law of the town permitting use of such land for "farms."

Maintenance of a suit in equity, purporting to have been brought and prosecuted in behalf of a town by its building inspector to enjoin violations of the town's by-laws, was not precluded merely by the fact that no formal evidence was presented of the appointment of the inspector or that he was acting by virtue of an appointment.

BILL IN EQUITY, filed in the Superior Court on July 24, 1942.

The case was heard by *Baker,* J.

*J. E. Henchey,* for the defendants.

*S. R. Wrightington,* for the plaintiff.

RONAN, J.    This bill in equity seeks an injunction to restrain the defendants from continuing to use certain premises contrary to the provisions of a zoning by-law of the town of Lincoln, and from erecting upon said premises a building without any permit from the building inspector of said town, in violation of the provisions of a building by-law. The suit was heard by a judge, who entered a final decree enjoining the defendants from violating each of these by-laws. Both defendants have appealed.

We summarize the material facts found by the judge. The corporate defendant, which is owned and controlled by the defendant Murphy, on February 10, 1942, leased to him a tract of land comprising thirty-five acres, nearly thirty of which were located in Lincoln. Murphy, on April 1, 1942, leased from one Connors an adjoining parcel of twenty acres. Less than ten acres of the larger lot were fit for culti-

vation and not more than four or five acres of the Connors land were suitable for tilling. Murphy, on June 5, 1942, began the business of raising hogs on these two lots, and at the time of the hearing he had nearly twenty-one hundred hogs. He intends to increase this number to twenty-five hundred. None of the feed for these animals is raised upon the premises. Their sole supply of food consists of one hundred fifty barrels of garbage, which the defendant Murphy obtains each day at Fort Devens in Ayer and transports to Lincoln. In the summer of 1942, the individual defendant raised spinach on two lots, the area of the first being one half acre, and of the second one third acre, and sold the entire crop for $56.25. The only building upon these premises other than the wooden structures or platforms used for sheltering and feeding the animals is a one story brick building used for the storage of trucks, bedding and grain. No livestock other than hogs are raised or kept upon the land in question. The premises are located in a district that has been zoned as a single residence district. One of the permitted uses of land in such a district is "farms, greenhouses, nurseries and truck gardens; and the sale of produce raised in the town or on land of the owner." The judge found that the premises "were operated for the sole purpose of engaging in the business of raising hogs commercially," and that the land was not a farm within the meaning of the by-law.

The building by-law forbade the erection of any building without a permit from the building inspector except a building less than ten feet square and "ordinary outbuildings used in connection with a farm." The judge found that, at the time the bill was filed, the individual defendant was constructing a building one hundred five feet long, twenty feet wide, and eight feet high; that this structure has not been completed; and that it was intended to house three hundred young hogs. He further found that this building, if completed, would not be used in connection with a farm as that term is used in the building by-law; and that no permit for its erection had been granted by the building inspector.

The question presented for decision is whether the premises occupied and used as disclosed by these findings are a farm within the meaning of the zoning and building by-laws of the town.

Lincoln is a small town of less than eighteen hundred inhabitants, situated about sixteen miles from Boston. It has no industrial or manufacturing plants. It is a community of homes and farms. The zoning by-law, which seems to have been adopted with due regard to these physical characteristics of the town, permits the establishment and the carrying on of a farm in any part of the town. It was apparently thought that the use and occupancy of land for farming was not detrimental to the health, safety, convenience or welfare of the inhabitants or inconsistent with the natural development of the town. A preference in favor of farms is contained in the building by-law that requires a permit from the building inspector for the construction or alteration of buildings but excepts from this requirement "ordinary outbuildings used in connection with a farm." But neither the zoning nor the building by-law furnishes any definition of a farm. The term is susceptible of various meanings, depending upon the context and the purpose and intent of the contract or statute in which it appears. It has been defined or explained in decisions where one has contended that his occupation, or the use of land in carrying on his occupation, granted him an exemption or a privilege under social security or workmen's compensation acts, or zoning ordinances, or the bankruptcy act. U. S. C. (1940 ed.) Title 11, § 203 (r). *First National Bank & Trust Co.* v. *Beach,* 301 U. S. 435. *Gregg* v. *Mitchell,* 166 Fed. 725. *United States* v. *Turner Turpentine Co.* 111 Fed. (2d) 400. *Chaney* v. *Stover,* 123 Fed. (2d) 945. *Kaslovitz* v. *Reid,* 128 Fed. (2d) 1017. *Mulligan* v. *Federal Land Bank,* 129 Fed. (2d) 438. *Wayland* v. *Kleck,* 57 Ariz. 135. *Hagenburger* v. *Los Angeles,* 51 Cal. App. (2d) 161. *Chudnov* v. *Board of Appeals of Bloomfield,* 113 Conn. 49. *H. Duys & Co. Inc.* v. *Tone,* 125 Conn. 300. *Batt* v. *Unemployment Compensation Division of Industrial Accident Board,* 63 Idaho, 572. *St. Louis Rose Co.* v. *Unemployment Compensation Commission,*

348 Mo. 1153. *State* v. *Kennerly*, 98 N. C. 657. *Lowe* v. *North Dakota Workmen's Compensation Bureau*, 66 N. D. 246. *Henry A. Dreer, Inc.* v. *Unemployment Compensation Commission*, 127 N. J. L. 149. *In re Bridges*, 287 N. Y. 782. We need not pause to discuss the different shades of meaning the word has acquired under the statutes involved in these decisions for we are of the opinion that, in the instant case, the word should be given its usual and commonly understood significance. There is nothing in either by-law indicating that any special or peculiar meaning was intended. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145. *Martinelli* v. *Burke*, 298 Mass. 390. *Kennedy* v. *Consolidated Motor Lines, Inc.* 312 Mass. 84.

One of the chief characteristics of a farm ordinarily is the use of the land for the production of crops by the cultivation of the soil, but farming activities are not confined to the tilling of the land and the harvesting of crops. Land may be utilized for grazing by livestock, or in raising hay for cows for the production of milk and other dairy products. A part of the land may be profitably employed in the raising of poultry and the sale of chickens and eggs. There may be an orchard upon the premises which would yield enough fruit to warrant the expenditure of labor in caring for the trees and collecting and marketing the fruit. What branches of these farming operations will be undertaken will depend upon whether they can be conducted at a profit, and that, in turn, depends upon the size of the farm, the nature of its soil, its capacity to produce sufficient crops to pay for their cultivation, the demand for different kinds of farm products, the availability of the markets, the practice of good husbandry, and other factors that must be considered in determining what use should be made of the land. The raising of hogs by a farmer not only for his own use but for market is not unusual. But the extent to which hog raising may be carried on in conjunction with other farming operations need not be decided here because no such operations were conducted. In the present case, the amount of land that was cultivated and the quantity and value of the crop produced are negligible. The premises

are devoted entirely to the raising of nearly twenty-one hundred hogs. All of them are kept upon that part of the premises located in Lincoln. No other livestock are kept. Not a pound of the food furnished to the hogs is produced upon the premises. The property is not equipped with any implements of farming. There are no barns, sheds nor buildings for the housing of livestock, other than the unfinished building which the town contends is being erected in violation of the building regulation. The hogs are confined in twenty-two pens, each pen inclosing three fourths of an acre of land. The premises are used as a piggery. *Commonwealth* v. *Perry*, 139 Mass. 198. *Lexington* v. *Miskell*, 260 Mass. 544. *Swansea* v. *Pivo*, 265 Mass. 520. *Ryder* v. *Board of Health of Lexington*, 273 Mass. 177. It has long been recognized that the maintenance of a piggery is a use of land different from that of ordinary farming. Permits may be required for the keeping of hogs, and boards of health are authorized to assign places where they may be maintained in accordance with the statute that empowers such boards to confine noisome trades or businesses to a particular part of the city or town or to prohibit them altogether. G. L. (Ter. Ed.) c. 111, § 143, *et seq.*, as amended. *Commonwealth* v. *Patch*, 97 Mass. 221. *Quincy* v. *Kennard*, 151 Mass. 563. Since the amendment of G. L. (Ter. Ed.) c. 111, § 143, by St. 1933, c. 269, § 2, boards of health cannot assign any part of a city or town as a suitable place for a piggery if such use is prohibited by a zoning regulation. To hold that a piggery of the size and character of that shown by this record should be considered as a farm within the zoning by-law would be inconsistent with the principal aim and purpose of the by-law, and would render worthless the safeguards and protection that the by-law endeavors to furnish to single residence districts. The construction of this by-law in accordance with common sense and sound reason prohibits the use of the premises in question for the purpose for which they are now employed. *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 492. *Acford* v. *Auditor of Cambridge*, 300 Mass. 391, 395.

The defendants rely upon *Winship* v. *Inspector of Build-*

*ings of Wakefield*, 274 Mass. 380, and *Moulton* v. *Building Inspector of Milton*, 312 Mass. 195. In the first case it was held that an eighteen-acre tract of land, of which a portion, consisting of four or five acres, was cultivated and produced various kinds of vegetables some of which were sold in the market; another portion, consisting of one hundred twenty-five trees, was used for an apple and pear orchard, the product thereof being sold for $468; another part was used for raising three thousand chickens, proceeds from the sales of poultry and eggs amounting to $100 to $125 a month; and the remainder was used as a residence by the owner, could be found to be a farm within the meaning of a zoning regulation somewhat similar to the one in the case at bar. But in that case a considerable portion of the tract was used for the production of crops and fruit, and, while the income from the vegetables and fruit was less than that from the sales of poultry and eggs, yet the tract of land was devoted to farming operations. In the second case cited, the erection of a silo, which is a necessary and usual adjunct to a dairy farm that has any considerable number of livestock, was held to be a permissible use of land in a district in which premises occupied for agricultural purposes were exempt from certain restrictions of the zoning regulations. A dairy farm was held to come within the exemption. An exemption for agricultural purposes is much broader than one for "farms, greenhouses, nurseries and truck gardens." *St. Louis Rose Co.* v. *Unemployment Compensation Commission*, 348 Mo. 1153. *Lowe* v. *North Dakota Workmen's Compensation Bureau*, 66 N. D. 246. It does not follow that because a dairy farm is permissible under a zoning regulation permitting the occupancy of land for an "agricultural use," the maintenance of a piggery is permissible under a zoning by-law that allows the land to be used as a farm.

The defendants next contend that there was no evidence showing that the building inspector had been duly appointed and that he was acting in pursuance of that appointment. It is not contended that there was not a building inspector; that he had given a permit for the erection of a building upon the premises of the corporate defendant;

that he was not active in bringing the present proceedings; that he did not sign the bill of complaint; or that he did not take an oath to the truth of its allegations. It was admitted in the answer of each defendant that it was the duty of the inspector to enforce the zoning regulations. The point now urged does not appear to have been raised in the Superior Court, and, if we assume it is open, it is enough to say that evidence that one is performing the duties of a public office is sufficient, in the first instance at least, to show that he was duly elected or appointed to that office. It "is not necessary, in proving that a man is a public officer, to produce his commission. It is enough to prove that he has acted as such." *Barry* v. *Smith*, 191 Mass. 78, 86. *Commonwealth* v. *Wotton*, 201 Mass. 81, 85. *Welsh* v. *Briggs*, 204 Mass. 540, 549.

There was no evidence that the hogs were slaughtered or converted into pork upon the premises, and the defendants contend that the final decree enjoining them from carrying on "the trade or business of producing pork from feeding hogs on garbage" should be struck from the decree. The decree should be modified by substituting for those words the following: "the trade or business of raising hogs," and, as so modified, is affirmed with costs.

*Ordered accordingly.*