45 So.2d 302

**STATE v. SOUTHLAND HATCHERY et al.**

**3 Div. 553.**

Supreme Court of Alabama.

March 23, 1950.

A. A. Carmichael, Atty. Gen., and M. Roland Nachman, Jr. Asst. Atty. Gen., for appellant.

450

Steiner, Crum & Weil, of Montgomery, for appellees.

LAWSON, Justice.

This is an appeal by the State of Alabama from a decree of the circuit court of Montgomery County, in equity, setting aside and vacating an assessment made by the State Department of Revenue on March 9, 1948, for sales tax for the period beginning January 1, 1943, and ending December 31, 1947, against appellees, Southland Hatchery, a partnership, and the individual members thereof, namely, Stanley Brindley, H. C. Appleton, and W. H. Appleton. The assessment of the Department of Revenue was based upon the proceeds of sales of products of the hatchery, baby chicks and broilers.

We will refer to appellees as the taxpayer and to appellant as the State.

■ The procedure followed by the taxpayer to have the assessment of the Department of Revenue reviewed is not questioned. § 140, Title 51, Code 1940; State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342; Merriwether v. State, 252 Ala. 590, 42 So.2d 465.

The bill or petition filed by the taxpayer in the circuit court of Montgomery County, in equity, was against the State Department of Revenue and the State of Alabama.

It sought to establish the taxpayer's nonliability for all the tax assessed on the grounds (1) that taxpayer was exempt from liability for the tax under the provisions of subsec. (f) of § 755, Title 51, Code 1940; (2) that taxpayer was exempt from liability for the tax under the provisions of subsec. (h) of § 755, Title 51, Code 1940, as amended by an act approved August 13, 1947, General Acts 1947, pp. 155–156.

As to the portion of the tax assessed for the period prior to February 11, 1943, the bill avers that it was barred by the statute of limitation. And as to the assessment for the month of December, 1947, it is averred that payment was made for that period prior to the date of the assessment.

■ The State Department of Revenue demurred to the bill on the ground that it was not a proper party to the proceedings The demurrer was sustained. This ruling is not before us as there is no cross appeal or cross assignments of error.

The State demurred to the bill as a whole and to its several aspects. The demurrer was sustained as to that aspect of the bill which sought to establish nonliability of

the tax by virtue of the provisions of subsec. (h) of § 755, Title 51, Code 1940, as amended by the said 1947 act. Demurrer was also sustained as to that aspect of the bill where taxpayer sought to avoid the tax claimed prior to February 11, 1943, by virtue of the statute of limitation. Since there is no cross-appeal or cross assignment of error, these rulings of the court are not here for review.

■ In all other respects the demurrer of the State was overruled. The first five assignments of error challenge the correctness of the decree of the trial court in overruling the demurrer of the State to the other aspects of the bill. But no reference is made to these assignments of error in brief filed on behalf of the State, which is sufficient to justify their consideration on this appeal. Alabama Mills v. Brand, 251 Ala. 643, 38 So.2d 574; Miller v. Faust, 250 Ala. 545, 35 So.2d 162.

The other assignments of error challenge in various ways the correctness of the decree of the trial court in avoiding the assessment of the Department of Revenue on the ground that under the evidence the taxpayer was exempt by virtue of the provisions of subsec. (f) of § 755, Title 51, as it appeared in the Code of 1940, from the payment of sales tax on the gross proceeds of sales of "baby chicks" and "broilers."

Section 755, Title 51, Code 1940, deals with exemptions from sales tax. Subsec. (f) thereof is in the following language: "The gross proceeds of sales of all livestock by whomsoever sold; and also the gross proceeds of poultry and other products of the farm, dairy, grove or garden, when in the original state of production or condition of preparation for sale, when such sale or sales are made by the producer or members of his immediate family or for him by those employed by him to assist in the production thereof. Nothing herein shall be construed to exempt or exclude from the measure or computation of the tax levied, assessed or payable hereunder, the gross proceeds of sales of poultry or poultry products when not products of the farm."

The only witness in the instant case was Mr. Stanley Brindley, one of the three partners of the Southland Hatchery, whose testimony may be thus summarized:

In 1914, witness and his father, B. M. Brindley, became the owners of 174 acres of land located in the country about three and one-half miles from Collinsville, De-Kalb County. Witness and his father began operations on a small scale, hatching a few chickens in incubators located on their farm. Their operations were gradually increased and extended from time to time until 1928, when witness, Stanley Brindley, and the two Appletons formed a partnership for the purpose of operating the hatchery, the Appletons agreeing to aid in the financing of the enterprise. The partnership began operations with one incubator of 5200-egg capacity. Since that time the Brindleys have constructed "laying houses," "brooder houses" and "range shelters."

It was agreed that for a fixed annual rental the Brindleys, who owned the land and presumably the various types of houses used in connection with the hatchery, would furnish the said buildings and so much of the land as was needed to carry on and operate the hatchery. The taxpayer usually used about ten acres of the land annually for a range. The acreage so used was changed each year so as to minimize disease. The remainder of the land was used or operated by Stanley Brindley for himself or his father, mainly as a cattle farm.

On the land used by the taxpayer various types of grasses and grains were planted on which the chickens fed. This land the taxpayer cultivated from time to time.

The principal business of the hatchery was the production and sale of "baby chicks," which were in the main sold to farmers; however, some of the "chicks" were raised to the size of "broilers" and then shipped to other points in this and surrounding states. Most of the feed for the poultry was purchased, as it was necessary to have a properly balanced diet.

Not more than two per cent of the eggs used in the hatchery were produced by hens belonging to the partnership. The other eggs were purchased from farmers living nearby, the taxpayer paying from ten to twenty-five per cent above the market price

for the eggs so purchased. The taxpayer purchased eggs only from farmers with whom they had contracted. Under the terms of such contracts the taxpayer furnished the cocks or roosters to the farmers. The cocks or roosters so furnished remained the property of the taxpayer. The taxpayer, under the provisions of the contracts, supervised the flocks of the farmers, giving them blood tests and tests for lice and mites. In that way it was able to produce a stronger chicken.

One of the Appletons lived in Atlanta, Georgia; the other lived in Dadeville, Alabama. Neither of them did any manual labor or devoted any time to the actual management or operation of the enterprise, but did visit it from time to time, and they furnished the capital. It was understood between Stanley Brindley and the Appletons that the former would manage the enterprise and give it his personal attention. He gave practically his entire time to the enterprise. He was the manager and supervisor. There was some hired labor, mainly farmers who lived in the neighborhood. They were hired from time to time. The number varied according to the season. Usually there were five or six of such employees.

Stanley Brindley and the employees rendered all the services necessary in the production of the "chicks" and "broilers" which were sold. All such sales were made by them.

We have construed the provisions of law now codified as subsec. (f), § 755, Title 51, supra, in so far as they relate to the sale of poultry and poultry products in only one case, that of Curry v. Reeves, 240 Ala. 14, 195 So. 428. It was said in that case (1) that for the exemptions to obtain the poultry and poultry products sold must have been "products of the farm"; (2) that the exemption was enacted for the benefit of the farmer in order to encourage a wider market for his products, and bears no relation to a mercantile business.

The facts in the instant case are clearly distinguishable from those in Curry v. Reeves, supra, where the poultry sold was hatched in incubators located in Reeves' store. Although the poultry so sold was hatched from eggs produced on Reeves' farm, we held that the exemption provisions of subsec. (f), § 755, Title 51, supra, did not apply to the sale of such poultry, as Reeves' principal business interest was that of a wholesale and retail dealer in feedstuffs and in connection with such mercantile business, he operated a hatchery and was claiming the benefit of the exemption more as a merchant than as a farmer.

By the use of the word "hatchery" in the Reeves case we did not intend to imply that under all circumstances the exemption provisions of subsec. (f), § 755, Title 51, supra, are not applicable when the poultry sold was hatched by artificial means.

The pivotal question in this case is, was the Southland Hatchery a farm within the meaning of subsec. (f) of § 755, Title 51, Code 1940? Of course, the name under which the operations were conducted is not controlling.

No case has come to our attention wherein we have attempted to define the word "farm." Nor will we attempt to make any comprehensive definition in this case, as our research discloses that what constitutes a "farm" must differ under the particular statute considered or the circumstances of the particular case.

In Dillard v. Webb, 55 Ala. 468, we defined the term "agriculture" to be " 'the art or science of cultivating the ground, especially in fields or large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding and management of livestock; tillage, husbandry, and farming.' The variety of products of the earth, of agricultural implements, and of domestic animals, invited and put on exhibition at agricultural fairs, attests the comprehensiveness of the term, 'agriculture.' It refers to the field, or farm, with all its wants, appointments, and products, as horticulture refers to the garden, with its less important, though varied products." In the recent case of State of Alabama v. Wertheimer Bag Co., et al., Ala.Sup., 43 So. 2d 824, we held that the term "agriculture" includes "horticulture."

While the term "farm" may not under all circumstances be as comprehensive as "ag-

riculture," it is clear that the legislature of this state recognizes that the products of the farm are not limited to crops produced by the cultivation of the soil. This is evident from the very language of the statutory provision here under consideration. Subsec. (f), § 755, Title 51, supra. And § 473, Title 2, Code 1940, reads as follows: "The term 'farm products' shall, except as otherwise provided, include all agricultural, horticultural, vegetable and fruit products of the soil, meats, marine food products, poultry, eggs, dairy products, wool, hides, feathers, nuts, and honey, but shall not apply to seeds sold at retail, nor include timber products, tea, coffee, or pelts of fur-bearing animals."

These statutory provisions are consistent only with the thought that poultry and eggs may be the products of a farm.

But the State contends that poultry and poultry products cannot be considered as products of the farm where the only operation is that of producing poultry and poultry products. Otherwise expressed, it is the contention of the State that the raising of poultry can be considered as a part of and included within farming when carried on in connection with and incidental and subordinate to the tillage of the soil. In support of this position the State relies in the main on the following cases from other jurisdictions: Chudnov v. Board of Appeals of Town of Bloomfield, 113 Conn. 49, 154 A. 161; Colasuonno v. Dassler, 183 Misc. 904, 51 N.Y. S.2d 870; Town of Lincoln v. Murphy, 314 Mass. 16, 49 N.E.2d 453, 146 A.L.R. 1196. We have given careful consideration to these cases, but are of the opinion that they are not controlling here.

In the cases above cited, the question as to what constituted a "farm" arose in connection with zoning ordinances of municipalities and those cases recognized the rule that the word "farm" must be construed in the light of the purpose sought to be accomplished by the ordinances.

In this state it is a matter of common knowledge that poultry production by our farmers is almost universal, though carried on more extensively by some than by others. The fact that the taxpayer specialized in the production of poultry does not, under the facts of this case, take it out of the farming class.

We think it would do violence to the legislative intent to say that the exemption statute here, under consideration does not apply to those engaged in the production of poultry on a large scale by the use of modern scientific methods, such as were employed by the taxpayer. The word "farm," when construed with reference to its context in the statute and so as to effectuate the intention of the lawmakers, must be held to embrace an operation such as that conducted by taxpayer, devoted exclusively to the production of poultry.

Since our early history, farming operations have been carried on by partnerships. McCrary v. Slaughter, 58 Ala. 230; Autrey v. Frieze, 59 Ala. 587; Hunter v. Parkman, 250 Ala. 312, 34 So.2d 221.

Although all of the members of the partnership do not devote their personal attention to the actual operation of the farm, still that which is produced through the partnership operation is nevertheless a farm product within the meaning of subsec. (f) of § 755, Title 51, Code 1940.

The judgment of the trial court is affirmed.

Affirmed.

BROWN, FOSTER and STAKELY, JJ., concur.