75 So.2d 611

**SANITARY DAIRY et al.**

v.

**STATE of Alabama.**

4 Div. 778.

Supreme Court of Alabama.

Nov. 4, 1954.

Alto V. Lee, III, Huey D. McInish, L. A. Farmer, Dothan, for appellants.

Si Garrett, Atty. Gen., H. Grady Tiller, Asst. Atty. Gen., for appellee.

SIMPSON, Justice.

This is an appeal from a decree of the circuit court of Houston County sustaining the assessment of sales tax made by the State Department of Revenue for certain quantities of milk sold by appellants from April 1, 1948, to January 1, 1951. Appellant is a partnership operating a dairy in Houston County. It also operates four "Milk Stores" in the city of Dothan. During the period involved, these stores were regular retail establishments selling, in addition to bottled milk, such items as cigarettes, razor blades, bread, sandwiches, ice cream, cold drinks, and malts. Tables and chairs were placed in the stores for the convenience of customers. Separate cash registers were used to record the sale of milk and other merchandise. The total sales from milk at all the stores usually exceeded the gross sales of the other merchandise during each of the years involved, but at some of the stores the other merchandise sometimes outsold milk. The milk was sold in containers ranging from half-pints to half-gallons. Purchasers of the milk were never supplied with a glass or straw with which to drink the milk on the premises (as were consumers of malted milk and other soft drinks), but it is undisputed that they sometimes consumed it in appellant's establishment. From sixty to seventy-five per cent of the milk sold

was "producer milk" which came from appellant's own dairy. The remaining twenty-five to forty per cent was "distributor milk" which appellant purchased direct from the producers. It takes about one hundred employees to carry on all of appellant's operations and the division of labor is such that those who sell the milk in the milk stores are not concerned with the production of milk or any of the other operations.

There is no question that the sales of milk during the period in question are within the coverage of Title 51, § 753, Code 1940, imposing a sales tax on retail sales unless they are within the exemptions of subsections (f) and (q) of § 755. (Subsection references are to those provisions as they appear in the 1953 Supplement.) The exemption in subsec. (f) is applicable to the "producer milk" and as pertinent reads as follows:

"The gross proceeds of sales of * * * products of the * * * dairy * * * when in the original state of production or condition of preparation for sale, when such sale or sales are made by the producer or members of his immediate family or for him by those employed by him to assist in the production thereof."

In applying this provision we are aided by two rules of construction. One is that it is designed for the benefit of farmers and not those engaged in the mercantile business. State v. Southland Hatchery, 253 Ala. 449, 45 So.2d 302; Curry v. Reeves, 240 Ala. 14, 195 So. 428. The other is that exemptions from tax statutes are to be strictly construed against the taxpayer. Curry v. Reeves, supra. The policy expressed in these two principles, together with the plain words of the statute, compels us to but one conclusion. To be exempt from taxation under subsec. (f) the sale must have been by the producer, his immediate family or someone employed by him to assist in the production of the product. The distribution and sale of a commodity is entirely separate from its production. Though in some cases the dividing line may be hazy, here it is entirely clear. The production of the milk took place on appellant's dairy. Its sale took place in its retail milk stores. The latter was conducted by employees who had nothing to do with the former. This being the case, appellant has failed to bring itself within the provisions of the exemption, supra. At first blush, the mind may rebel at such a distinction, but no mature consideration, in the light of the purpose of the provision, its utility as a device for classification is apparent and no further comment with reference to "producer milk" is deemed necessary.

The exemption from liability for tax on the sale of the "distributor" milk is controlled by subsec. (q), which provides as follows:

"The gross proceeds of sale or sales of fluid milk as is now or may hereafter be defined by law when such sale or sales are made by a distributor who has purchased such fluid milk or the milk processed into such fluid milk direct from the producer thereof. Provided, however, that the term 'distributor' as used here shall not be construed to include hotels, restaurants, cafes, cafeterias, drug stores, grocery stores and other retail establishments where milk is served or sold for consumption on the premises or as an incident to the principal business."

It is thus seen that if milk is served or sold for consumption at the milk stores of appellant or if the sale of milk is only an incident to appellant's principal business in operating the "Milk Stores," the sales are not exempt from the sales tax.

It is undisputed that some of the milk sold at appellant's stores was consumed there. Appellant stresses the occasional nature of such drinking by customers and the small quantity thus consumed, and that although on a few occasions milk sold at appellant's stores may be consumed there, it is not sold *for* that purpose. We think the test, however, is what actually happens and not what is the mental state of the seller. In this case it is plain that the

642

appellant has suffered milk to be consumed on the premises where sold. The statute makes no provision in regard to the quantity.

In view of this conclusion, it becomes unnecessary to determine whether appellant comes within the second proviso of the exemption with respect to "distributor milk."

We regard the judgment below as well founded.

Affirmed.

LIVINGSTON, C. J., and STAKELY and CLAYTON, JJ., concur.