CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT,
v. OLIVE K. GSANTNER, DOING BUSINESS AS THE BAYBROOK
KENNELS, APPELLEE.

77 N. W. 2d 663

Filed June 22, 1956.   No. 33964.

*Edward F. Fogarty, Bernard E. Vinardi, Neal H. Hilmes,* and *Irving B. Epstein,* for appellant.

*Henry C. Winters,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

As presented here, plaintiff sought an injunction prohibiting defendant from operating a dog kennel on described property. Defendant by answer admitted the operation of the dog kennel and contended that it was a nonconforming and permitted use within the meaning of section 14-406, R. R. S. 1943. Trial was had. The trial court rendered judgment dismissing plaintiff's petition with prejudice. Plaintiff appeals.

We reverse the judgment of the trial court and remand the cause with directions to render judgment for plaintiff as prayed.

The property involved is located on Pacific Street and was zoned 2nd Suburban by Zone Ordinance No. 15239 effective March 1, 1945.

Prior to 1946 the property was a part of a 62-acre farm. A house, barn, corncrib, and a chicken coop were

buildings on the property. During that period of time the occupants raised cattle, hogs, mules, and chickens on the premises here involved. Some of these animals were customarily sold for profit.

Defendant purchased about 15 acres of this property, including the building site, by contract in April 1946, and entered into possession. She raised some pigs for the first 3 years.

Immediately after going into possession, defendant began to use the corncrib as a dog kennel, and built outside pens. She then and since has there conducted the business of raising and selling dogs, and boarding dogs for hire. It is this operation which the plaintiff seeks to enjoin.

The property of defendant, here involved, is within one-half mile of a designated residential district.

Section 14-406, R. R. S. 1943, provides in part: "The lawful use of land existing on April 1, 1925, although such use does not conform to the provisions hereof, may be continued, but if such nonconforming use is abandoned, any future use of said premises shall be in conformity with the provisions of sections 14-401 to 14-418. The lawful use of a building existing on April 1, 1925, may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the building, provided no structural alterations, except those required by law or ordinance are made therein. If no structural alterations are made, a nonconforming use of a building may be changed to another nonconforming use of the same or a higher classification."

Defendant contends that she has changed the use of the premises from one nonconforming use to another nonconforming use of the same classification.

This argument is based on the premise that under the zoning ordinance a building on the premises in a 2nd Suburban District may be used for: "Agricultural and horticultural uses, including the usual farm structures,

dairy farms, commercial poultry farms and commercial live stock farms, but such dairy farms, commercial poultry farms, or commercial live stock farms shall not be established within one-half mile of a designated residential district." Zone Ordinance No. 15239, §§ XII and XIII, pp. 22, 24.

From the above provision it is argued that a commercial livestock farm cannot be established within one-half mile of a designated residential district, but that it can be so operated in a 2nd Commercial District.

· The ordinance by definition provides: "Dog Kennel: A lot, building, structure, enclosure, or premises whereon or wherein three (3) or more dogs over three months of age are kept or maintained for any purpose whatsoever.

"Dog Kennel, Non-Conforming: A dog kennel which is located in an area other than one classified as 2nd Commercial District, or Industrial District, and which was located in said area before the same was zoned or rezoned to 2nd Commercial District or Industrial Districts." Zone Ordinance No. 15239, § I, p. 5.

Defendant then argues that a dog kennel operated outside of a 2nd Commercial District is a nonconforming use. Hence she concludes that both a commercial livestock farm and a dog kennel are of the same classification.

The trial court accepted the defendant's contentions in its decree.

The position is not tenable.

We have held: "Where the provisions of a zoning ordinance, as to the uses of property which are permitted or which are prohibited in certain districts, are expressed in common words of everyday use, without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning." Henke v. Zimmer, 158 Neb. 697, 64 N. W. 2d 458.

What then is the generally accepted meaning of the words used in the ordinance provisions above quoted?

The framers of the ordinance have defined dog ken-

nels, which definition, of course, is to be accepted.

Under the above ordinance "Agricultural and horticultural uses, including the usual farm structures, dairy farms, commercial poultry farms and commercial live stock farms" are conforming uses, except that "dairy farms, commercial poultry farms, or commercial live stock farms shall not be established within one-half mile of a designated residential district."

The exception goes not to agricultural uses but to the specific included uses. It is a ban on the establishment, prospectively, of the uses as set out within one-half mile of a designated residential district.

Defendant does not contend that her dog kennel business is within the agricultural use classification, and hence a conforming use.

For defendant to come within the permitted nonconforming use provisions of the statute, it is necessary that three things be established: (1) That the use made of the premises prior to the adoption of the ordinance was a commercial livestock farm operation; (2) that the use for which the premises are now used is a commercial livestock farm operation; and (3) that the two uses are of the same classification or that the dog kennel use is of a higher classification.

Other nonconforming uses are not involved.

In Jones v. Johnson, 80 Ga. App. 340, 55 S. E. 2d 904, the court held: "The distinction between agricultural uses on the one hand, and business, manufacturing or commercial uses on the other is fundamental, * * *."

Chudnov v. Board of Appeals of Town of Bloomfield, 113 Conn. 49, 154 A. 161, was a zoning case. It involved an attempt to establish the raising of poultry as a business within a residence zone in connection with other farming activities on the ground that it was a "farming" operation. The court denied the claim. It was held: "It is generally recognized, however, that stock-raising, dairying, and kindred activities are legitimately to be considered as a part of and included within

farming when carried on in connection with and incidental and subordinate to tillage of the soil. * * * It is apparent that, as a general rule, the limitation of such activities as the raising or keeping of livestock or poultry to subservience to and an incident of the main characteristic of the occupation of farming—the cultivation and production of crops—will obviate, in large measure, or reasonably ameliorate the results, detrimental to the paramount interests and uses of a community or neighborhood of a residential character, which are to be anticipated from such activities when independently conducted."

Obviously the drafters of the ordinance here involved made a distinction between agricultural uses generally and "dairy farms, commercial poultry farms, or commercial live stock farms." In the Chudnov case the permitted use was "Farming, truck gardening, nurseries or greenhouses." Applicable thereto the court held: "That it is deemed necessary to specify these enterprises as permitted negatives an intent that others less obviously related to 'farming' are to be allowed not only in connection with and incidental to recognized farming operations but also as a distinct and independent business and use."

In Town of Lincoln v. Murphy, 314 Mass. 16, 49 N. E. 2d 453, 146 A. L. R. 1196, an attempt was made to establish a piggery in a residential zone where the permitted uses were "farms, greenhouses, nurseries, and truck gardens; and the sale of produce raised in the town or on land of the owner." The court held: "One of the chief characteristics of a farm ordinarily is the use of the land for the production of crops by the cultivation of the soil, but farming activities are not confined to the tilling of the land and the harvesting of crops. Land may be utilized for grazing by livestock, or in raising hay for cows for the production of milk and other dairy products. A part of the land may be profitably employed in the raising of poultry and the sale

of chickens and eggs. There may be an orchard upon the premises which would yield enough fruit to warrant the expenditure of labor in caring for the trees and collecting and marketing the fruit." The court held that the maintenance of a piggery was not permitted under the ordinance as a farming operation. In that case there had been no hog raising carried on on the premises prior thereto. Here there had been no dog kennel operations carried on on these premises prior to defendant's activities in that respect.

We conclude that the raising and selling of livestock conducted on this land prior to the enactment of the ordinance were in the classification of agricultural uses generally, and were not in the classification of a commercial livestock farm operation. The ordinance prohibits the establishment of a commercial livestock farm on the premises involved. Defendant seeks to change a conforming use to a nonconforming use. The ordinance prohibits it.

We do not hold, however, that the operation of a dog kennel is a commercial livestock farm operation. See, Howard & Herrin v. Nashville, C. & St. L. Ry. Co., 153 Tenn. 649, 284 S. W. 894, 46 A. L. R. 1530; Henderson v. Lancaster & Wallace, 2 La. App. 680; Granier v. Chagnon, 122 Mont. 327, 203 P. 2d 982; Dunkly v. Erich, 158 F. 2d 1; 54 C. J. S. 635; § 54-1101, R. R. S. 1943.

It follows that plaintiff is entitled to the injunction sought.

The judgment of the trial court is reversed and the cause remanded with directions to render a decree for the plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.