ALFRED J. MIODUSZEWSKI & another *vs.* TOWN OF SAUGUS.

Suffolk. February 5, 1958. — March 5, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Zoning. Farm. Dog.*

Premises in a residential zoning district of a town used for maintenance of a greyhound racing stable were not used as a farm or as an accessory of a farm within provisions of the zoning by-law permitting use of premises in the residential districts for "farms" and for "such accessory uses as are customarily incidental to" permitted uses. [143–144]

Use of premises in a residential zoning district of a town for the sale and distribution of milk not produced on the premises was not a use of the premises for a farm within a provision of the zoning by-law permitting "farms," nor a use for "agriculture" within the meaning of that word in G. L. (Ter. Ed.) c. 40A, § 5, inserted by St. 1954, c. 368, § 2. [144]

Facts found by a judge of the Land Court and common experience justified a conclusion that use of premises in a residential zoning district of a town for the "business of breeding, raising and training greyhounds . . . for racing" was different in kind from raising and selling a few beagles and farm dogs as a minor activity carried on in connection with the use of the premises for a dairy farm at the time of the adoption of the zoning by-law, and maintenance of such greyhound racing stable on the premises was not within a provision of the zoning by-law permitting the continuance of preëxisting nonconforming uses. [144–145]

The record in a proceeding in the Land Court, in which the evidence was not reported and the trial judge found that a parcel of some ten to twelve acres in a town located in a residential zoning district in which farms were permitted under the zoning by-law was, with the area surrounding it, "residential in character" and that the rear of the parcel was "usable as accessory to dwellings," did not show that the by-law was invalid as applied to that parcel, which had been used as a dairy farm at the time of its adoption. [145–146]

PETITION, filed in the Land Court on May 19, 1955.

The case was heard by *Cotton,* J.

*Israel Bloch,* for the petitioners.

*C. Carroll Cunningham,* Town Counsel, (*James J. Fox* with him,) for the respondent.

CUTTER, J. This is a petition filed in the Land Court under G. L. (Ter. Ed.) c. 240, § 14A, and c. 185, § 1 (j ½),

by the owners of certain premises in Saugus to determine the validity and effect of the zoning by-law of Saugus as applied to the premises.[1] The Land Court ruled that the premises were zoned, and may only be used, for residential purposes; that the business of "breeding, raising and training greyhounds . . . for racing" is not allowed under the zoning by-law; and that the zoning by-law placing the land in a residential district is valid and "of full force and effect as applied to" the premises. The petitioners have appealed. The general subject matter of maintaining a greyhound kennel on these or similar premises in Saugus has been before this court twice previously. *Sheehan* v. *Board of Appeals of Saugus*, 332 Mass. 188. *Meadows* v. *Town Clerk of Saugus*, 333 Mass. 760. See also *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199.

The Land Court judge found the following facts. The petitioners bought three lots, containing some ten to twelve acres in the aggregate, in part in 1923 and in part a few years later. When the petitioners moved in, the premises contained a dwelling, a barn, and a chicken coop. One of the petitioners bought two cows and a horse, started a small garden, and sold some produce. In 1926 he had sixteen cows, two horses, pigs, chickens, pigeons, and a collie and a shepherd dog to herd the cattle. By 1928 he had a bull and thirty-eight cows "and boarded some." He had bought five beagles and also ran a dairy which sold four hundred eighty quarts of milk per day. He gave up keeping pigs in 1928 but bred beagles and sold and gave away the puppies until 1941 "and thereafter concentrated on the dairy business" until 1947 when he sold his last cow. He also bred the collie and the shepherd. He had cats as long as he had cows and sold some cats and kittens. From 1947 to 1952 he bought milk and sold it.

[1] The town filed in the Superior Court a bill in equity under G. L. (Ter. Ed.) c. 40A, § 22, inserted by St. 1954, c. 368, § 2, to enjoin the use of the premises as a kennel for racing greyhound dogs. This bill was transferred to the Land Court under G. L. (Ter. Ed.) c. 212, § 26A, inserted by St. 1935, c. 229, § 1, and was heard with the present case. The bill thus transferred was dismissed without prejudice as not being within the jurisdiction of the Land Court. The town did not appeal.

In 1945, one of the petitioners and his son began keeping racing greyhounds and have continued to breed, raise, sell, and train them on the premises. Since 1953 the son has owned the dogs, and the activities with respect to them now constitute the only business on the premises. The dogs now there are worth $20,000 and thirty-three of them are qualified for racing. During the winter months the dogs are taken to Florida for racing and are kept on the premises from April through September. The petitioners' "only really usable area . . . up to around 1945 was a little over an acre of land" because the land was swampy or sloped sharply. Now kennels and yards, out of sight from the street, have been built for the dogs on a slope behind the cellar of a barn which has burned down.

Near the premises on the same side of the street are several residences and there is another residence on the opposite side of the street. On a nearby street there are twelve or more new ranch-house type dwellings. The rear of the premises is wooded and wild and adjoins town land. A part of the premises is only a little more than five hundred feet west of the Newburyport turnpike. In a strip within five hundred feet of the turnpike the zoning by-law permits light industry.

The son of the petitioners obtained a building permit for a kennel in 1952 and built it and from 1947 to 1954 various licenses to maintain a dog kennel on the premises were granted. Such licenses were denied in 1955 and 1956. See *Meadows* v. *Town Clerk of Saugus*, 333 Mass. 760, 764–765, which held that the town clerk could not be compelled by a writ of mandamus "to issue a license covering a location in a residence district where the maintenance of the kennel would be in violation of the zoning by-law."

In 1928 the town adopted a zoning by-law which became effective January 8, 1929. Section 4 of this by-law provided in part that, in single residence districts, and the locus was in such a district, "no land . . . structure or parts thereof shall be used, except for one or more of the following purposes: . . . . 6. Farms . . . and truck gardens, and the

sale of produce raised on the premises . . . . 10. Such accessory uses as are customarily incidental to any of the above uses subject to the provisions of section thirteen," which provided that accessory uses "shall be such as do not alter the character of the premises on which they are located or impair the neighborhood." Section 14 provides that any "building . . . or premises which, at the time of the adoption of this by-law, is being put to a non-conforming use may continue to be used for the same purpose. . . . A non-conforming use . . . shall not be changed to a less restricted use. . . . In residence districts, when a non-conforming . . . use has been discontinued for . . . one year, it shall not be reëstablished . . . ."

The trial judge found (a) that when the by-law became effective the premises were being used as a farm and that the principal business was a dairy; (b) that the breeding of cats and dogs on the premises "was not a part of the business of farming"; (c) that "the business of breeding, raising and training greyhounds . . . for racing . . . is manifestly dissimilar to the farming and dairy business previously carried on" and "is not farming, or an accessory use customarily incidental to it, or a permitted non-conforming use . . . within the .meaning and intent of the" by-law; (d) that, because the dairy was discontinued in 1952, "the business of farming . . . has been abandoned for more than one year"; (e) that the petitioners "are not conducting a dairy farm nor using the locus for agricultural purposes"; (f) "that the locus and surrounding area is residential in character" and that the use for kennels as at present "would impair the neighborhood and do violence to the intent of the zoning" by-law; (g) that "all of the rear of [the] locus is usable as accessory to dwellings"; and (h) that the premises are "properly zoned as residential and reasonably usable as such, and such zoning is not clearly arbitrary and unreasonable."

1. Although the keeping of farm dogs and beagles in 1928 might perhaps have been regarded as a use accessory to farming operations, the maintenance on the premises of what

is essentially a greyhound racing stable is not reasonably to be regarded as an accessory of a farm or as making the premises a farm. See *Lincoln* v. *Murphy,* 314 Mass. 16, 20, where a commercial piggery not connected with any other farming operations was held not to be a farm within the meaning of the zoning by-law. Pigs are farm animals and raising them could much more reasonably be regarded as farming than the maintenance of dogs intended for use solely for commercial racing connected with a pari-mutuel system of wagering rather than with any agricultural pursuit. See G. L. (Ter. Ed.) c. 128A, inserted by St. 1934, c. 374, § 3. See *Eberlein* v. *Industrial Commission,* 237 Wis. 555, 558 (raising foxes not farming); *Berry* v. *Recorder's Court of West Orange,* 124 N. J. L. 385, 389 (riding academy and stable not farming); *Omaha* v. *Gsantner,* 162 Neb. 839, 844 (dog kennel not a commercial livestock farm operation); *Dunkly* v. *Erich,* 158 Fed. (2d) 1, 2 (C. C. A. 9; raisers of trout for human consumption not farmers). See also *Murphy* v. *Hitchcock,* 150 Misc. (N. Y.) 36 (dog kennel held to be a nuisance).

The trial judge found that the last cow was sold in 1947 and thereafter the dairy business was carried on by buying milk and selling it and that even when cows were maintained, hay and grain were bought and no cow feed was raised on the premises. There were greyhounds on the premises as early as 1945. However, even if the raising of racing dogs, not shown to be used or useful in any agricultural pursuit, could be regarded as a use accessory to a farm, there was after 1947 no farm to which the use could be an accessory. Between 1947 and 1952 the premises were used for the sale and distribution only of milk not raised on the premises. Compare *Deutschmann* v. *Board of Appeals of Canton,* 325 Mass. 297, 299. This cannot be regarded as a farm use of the premises. Because there has been no use of the premises for "agriculture, horticulture or floriculture" for more than five years, G. L. (Ter. Ed.) c. 40A, § 5, inserted by St. 1954, c. 368, § 2, relied upon by the petitioners, is not relevant.

2. The petitioners contend that the raising of dogs con-

stituted a nonconforming use of the premises in existence
when the by-law was adopted in 1928 and continuously car-
ried on until the present time.  This, they contend, brings
the use within § 14 of the by-law permitting preëxisting
nonconforming uses to be continued.  This contention rests
upon the finding that one petitioner owned five beagles in
1928 and bred beagles until 1941; that he bred a collie and
a shepherd dog used in connection with the cow farm, and
continuously raised and maintained greyhounds on the prem-
ises from 1945 to the present.  The petitioners contend that
these operations constitute the continuous operation of a
kennel, as defined in G. L. (Ter. Ed.) c. 140, § 136A, in-
serted by St. 1934, c. 320, § 1, as amended by St. 1943, c. 111,
§ 1.  That definition has relevance only to kennel licenses
and is not of importance in relation to zoning.  The interval
between 1941, when the beagles were given up, and 1945,
when greyhounds were first brought in, may well have fa-
tally interrupted any use of the premises for a kennel, for
the two farm dogs would not seem to constitute a kennel
even under the definition in § 136A.  Even if the use could
be said to be continuous, the later use was radically different
from the earlier use.  Within the purpose and intent of the
zoning by-law, having upon a property as its only business
thirty-three dogs qualified for, and used for, racing is some-
thing very different from having on a dairy farm, as an
incidental activity, five beagles and two farm dogs.  The
subsidiary facts found by the trial judge and common ex-
perience plainly justified him in finding "that the business
of breeding, raising and training greyhounds . . . for racing
. . . is manifestly dissimilar to the farming and dairy busi-
ness previously carried on," with its minor and incidental
raising of a few dogs.  It was "a difference in quality and
not merely in degree."  See *Marblehead* v. *Rosenthal,* 316
Mass. 124, 128; *Everpure Ice Manuf. Co. Inc.* v. *Board of
Appeals of Lawrence,* 324 Mass. 433, 437.

3.  There is nothing in the record which suggests that there
has been any invalid zoning here.  The premises, under the

zoning by-law, can be used as a farm, as they were used prior to 1947. Compare *Pratt* v. *Building Inspector of Gloucester*, 330 Mass. 344, 345–347. The trial judge, who took a view of the premises and the surrounding neighborhood, has found "that the locus and surrounding area is residential in character" and "all of the rear of [the] locus is usable as accessory to dwellings." His findings and conclusions on this record, where the evidence is not reported, must be taken as true for nothing shows them to be inconsistent with other facts found or with the pleadings. See *Turner* v. *Morson*, 316 Mass. 678, 680–681. This is not a case like *Pittsfield* v. *Oleksak*, 313 Mass. 553, 556, or *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 444, 449, where facts have been shown which indicate plainly that the imposition of residential restrictions upon the land can have no rational relation to any of the purposes which would justify the application of the by-law to the locus. See *McHugh* v. *Board of Zoning Adjustment of Boston*, 336 Mass. 682, 688–689.

4. The decree of the Land Court is affirmed. The town is to have costs of this appeal.

*So ordered.*