W. G. MacKenzie Hume *vs.* Building Inspector
of Westford & another.

Middlesex.     December 6, 1968. — January 7, 1969.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Reardon, JJ.

*Mandamus. Nuisance. Zoning,* Accessory use, Incidental use, Kennel.
   *Dog.*

The existence of a remedy to abate a dog kennel nuisance does not preclude
   maintenance of a mandamus proceeding to require enforcement of a
   zoning by-law prohibiting the kennel. [181]
Maintenance of a kennel for a substantial number of dogs under a kennel
   license for noncommercial purposes was forbidden in a residence dis-
   trict by a certain zoning by-law not including a kennel in the specifically
   permitted primary and accessory uses and providing that an ac-
   cessory use must be "customarily incident to" a permitted primary use
   and must not be "detrimental to a residential neighborhood." [181–
   182]

Petition for a writ of mandamus filed in the Superior
Court on March 3, 1967.

The case was heard by *Mitchell,* J.

The case was submitted on briefs.

*P. Harold Ready* for the petitioner.

*John L. Connell, Jr.,* Town Counsel, for the Building In-
spector of Westford.

Cutter, J.  Dr. Hume, by petition for a writ of man-
damus filed March 3, 1967, seeks to require the building
inspector to prevent Ralph R. Rice from maintaining a
kennel (alleged to be in violation of the Westford zoning
by-law) upon his land.  Rice has been permitted to inter-
vene as a respondent.  A Superior Court judge ordered the
petition dismissed.  Dr. Hume appealed from the judgment
of dismissal.  The evidence is reported.

Rice and Dr. Hume live on adjacent lots in a Residence A
district.  Rice at the time of trial was maintaining two
kennels in eight rooms in his garage and, outside his garage,
three runways each six feet wide and thirty feet long and

an exercise yard 100 feet square. In the runways and exercise yard, dogs bred for show purposes were placed at certain times of day. Dr. Hume has frequently "complained of being disturbed by the barking of the Rice dogs in the daytime when they are kept in" the runways. At night the dogs are in a sound-proof garage. At the time of trial, Rice had six adult dogs and eight puppies, all "pure bred . . . Great Pyrenees Newfoundland dogs." A year earlier Rice had twenty-three dogs on the premises.

The Rice land contains one and one-third acres with a frontage of about 157 feet on Depot Street. The Rice garage is less than fifty feet from the Rice-Hume boundary. Dr. Hume's lot contains about one and one-eighth acres, with a frontage of about 172 feet, and his house is within twenty feet of the Rice-Hume boundary. On both lots most of the land lies to the rear of the houses and away from Depot Street. Pertinent provisions of the zoning by-law are summarized in the margin.[1] Rice held a town kennel license to keep more than ten dogs. See G. L. c. 140, §§ 136A, 137A–137C, as amended.

Rice, over a period of seven years, has sold three or four puppies. He has made no sales since obtaining a kennel license in 1966. In seven years, he has given away thirty-four dogs and puppies. He has not operated his kennel as a

---

[1] Section 3 of the by-law provides that in Residence A districts permitted uses shall include detached one family dwellings, nonprofit clubs, churches, municipal buildings, and telephone exchanges. Other permitted uses are: "4. Farming (agricultural), which terms shall include raising of livestock and poultry incident thereto, dairy, nursery, garden or greenhouse, selling primarily products or plants raised or produced on the premises and excluding any use injurious, noxious or offensive to the neighborhood but not excluding the use of fertilizer or the growing of crops. . . . 7. Commercial poultry farms, provided that the buildings housing the poultry be located not less than 200 feet from any street or way and not less than 100 feet from any adjoining property line. . . . 9. Accessory use of the same lot with and customarily incident to any of the above permitted uses and not detrimental to a residential neighborhood. Any of the following uses shall be considered 'accessory use.' " Then follows a list of uses such as professional use, rooms and board for not more than five persons, and a garage for not more than three automobiles, nursery school, storage of certain vehicles, and "stabling of horses for non-commercial purposes" after obtaining a permit from the board of health. Exceptions may be granted by the board of appeals for various other uses "provided the use is not injurious, noxious or offensive to the neighborhood." These uses include commercial piggeries, fur farms, cemeteries, ice harvest, hospitals, and agricultural storage.

commercial enterprise otherwise, unless raising dogs for show purposes is commercial.

The trial judge ruled that the by-law (fn. 1) "permits as an accessory use of residential property the keeping of three or more dogs for non-commercial, personal purposes," and that, if the kennel "is in any way a nuisance," Dr. Hume "has adequate remedies" under G. L. c. 140, § 137C (as amended through St. 1939, c. 206).[2]

1. There is no merit to the contention that mandamus does not lie because the remedy of revocation of the kennel license under G. L. c. 140, § 137C, is exclusive. There is no express statutory provision that c. 140, § 137C, excludes the operation of town zoning regulations authorized by G. L. c. 40A. If Rice's maintenance of the kennel is in fact a violation of the zoning by-law, Dr. Hume need not establish that the kennel is a nuisance in order to obtain by mandamus enforcement of the zoning by-law. See *Dodge* v. *Inspector of Bldgs. of Newburyport*, 340 Mass. 382, 385–386. Cf. *Kolodny* v. *Building Commr. of Brookline*, 346 Mass. 289, 290. The existence of a remedy to abate a kennel nuisance does not prevent application of any zoning restrictions against kennels. See *Sheehan* v. *Board of Appeals of Saugus*, 332 Mass. 188, 189; *Meadows* v. *Town Clerk of Saugus*, 333 Mass. 760, 765; *Mioduszewski* v. *Saugus*, 337 Mass. 140, 145.

2. The maintenance of a kennel large enough to require a kennel license is not specifically listed by the Westford by-law (fn. 1) as a permitted accessory use of residential land. See *Building Inspector of Chelmsford* v. *Belleville*,

---

[2] Section 137C provides, among other things, that the selectmen, upon the petition of twenty-five citizens, "setting forth that they are . . . annoyed to an unreasonable extent, by one or more dogs at a kennel . . . because of the excessive barking or vicious disposition of said dogs or other conditions connected with such kennel constituting a public nuisance," after due notice and public hearing may recommend to the county commissioners revocation of the license. There appears to be no contention that the kennel is offensive otherwise than because of the barking of the dogs. There was evidence that the county commissioners had declined to revoke the kennel license when the selectmen had recommended revocation. There was substantial and essentially uncontradicted evidence of prolonged daytime barking of dogs, which ceased after dark.

342 Mass. 216, 217–218. The operation of such a kennel, at least upon the facts here shown, is not farming (as defined in the by-law, fn. 1) or agriculture. See *Mioduszewski* v. *Saugus*, 337 Mass. 140, 143–144. The by-law clearly excludes uses "detrimental to a residential neighborhood" and allows as accessory uses[3] essentially only inoffensive, quiet uses of a type "customarily incident to" an expressly permitted use. In the context of this by-law, a kennel for a substantial number of dogs does not constitute a permissible accessory or incidental use.

3. The judgment is reversed. Judgment is to enter for issuance of a writ of mandamus commanding the building inspector to enforce the by-law to prevent the maintenance of Rice's kennel.

*So ordered.*

---

[3] The board of appeals may grant an exception for certain uses "not injurious, noxious, or offensive to the neighborhood."