COMMONWEALTH *vs.* WILFRED H. PROCTOR.

Essex.    February 4, 1969. — April 2, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Zoning*, Mink ranch, Farm, Animals. *Farm. Mink. Words,* "Domestic or other animals," "Agricultural purposes," "Farm."

A city's zoning ordinance permitting in a "Residence and Rural District" a farm defined as "a tract of land devoted to agricultural purposes, including the raising of domestic or other animals" did not allow the operation of a so called mink farm in such a district; it was irrelevant that the proprietor thereof held a Department of Agriculture "Mink Ranch Certificate" issued under G. L. c. 131, § 105A, inserted by St. 1950, c. 424, as amended, whereby his mink were "domesticated mink" and he was engaged in "an agricultural pursuit."

COMPLAINT received and sworn to in the Central District Court of Northern Essex on February 6, 1968.

Upon appeal to the Superior Court the case was heard without jury by *Kelleher*, J., a District Court judge sitting under statutory authority.

*John J. Lynch* for the defendant.

*Joseph D. Casey*, Assistant District Attorney, for the Commonwealth.

SPALDING, J.    The defendant was found guilty by a judge, sitting without a jury, under a complaint charging him with violating § 38–15 of the zoning ordinance of the city of Haverhill by operating a mink farm on his premises; a fine of $10 was imposed. At the conclusion of the evidence, the defendant requested a ruling "that the Court find as a

matter of law that the Commonwealth has not sustained the burden of proving the defendant guilty of the crime as charged." The judge denied the request, subject to the defendant's exception, and the sole question is whether the request was properly denied.[1]

The premises on which the alleged violation of the ordinance occurred were located in an area zoned as a "Residence and Rural District" (§ 38–15). Among the uses permitted in such a district are "farms, market gardens, nurseries and greenhouses." Elsewhere in the ordinance (§ 38–5) a farm is defined as "a tract of land devoted to agricultural purposes, including the raising of domestic or other animals, and including the buildings accessory to such agricultural purposes and the dwelling of the farmer." Another part of the ordinance (§ 38–7 [N]) provides that "The keeping of birds and animals is prohibited, except on farms."

The defendant at the time of the alleged violation was the holder of a Mink Ranch Certificate issued by the Department of Agriculture under G. L. c. 131, § 105A, inserted by St. 1950, c. 424, as amended.[2]

We are of opinion that mink are not included in the phrase, "domestic or other animals," and that the land was not "devoted to agricultural purposes." Accordingly the defendant's raising of mink was not a permitted use as a "farm" under § 38–15 of the zoning ordinance. Mink are not domestic animals within the meaning of the ordinance since the word "domestic" as applied to animals ordinarily carries the meaning of "tamed, associated with family life,

---

[1] In his brief the defendant argues that the Commonwealth failed to show that there was any criminal sanction contained in the ordinance and that therefore he had committed no crime. At the arguments this contention was waived.

[2] Section 105A provided for the licensing of mink ranches for the raising of "domesticated mink." "Domesticated" mink were defined as those that had been propagated in captivity for two or more generations. "The breeding, raising, producing in captivity and marketing . . . [of such mink should] be deemed an agricultural pursuit." The defendant's mink had been propagated in captivity for more than two generations and were "domesticated mink" as defined in § 105A. This section was repealed by St. 1967, c. 802, § 1. Provisions similar to those just mentioned are now included in G. L. c. 128, § 8B, inserted by St. 1969, c. 37, § 2.

accustomed to live in or near the habitations of men." *Commonwealth* v. *Flynn*, 285 Mass. 136, 139. See Restatement: Torts, § 506. Nor are the mink covered by the term, "Other animals." We think that these words "including the raising of domestic or other animals" must be read with the words immediately preceding them, namely, "a tract of land devoted to agricultural purposes." This strongly suggests that the term, "other animals," refers only to those similar to domestic animals and of the sort commonly associated with agricultural pursuits. If the meaning of "other animals" were not thus restricted, land on which lions, for example, were raised would be classified as a farm. We think that such an interpretation would be unreasonable. See *Lincoln* v. *Murphy*, 314 Mass. 16, and *Mioduszewski* v. *Saugus*, 337 Mass. 140, which held, respectively, that neither the raising of hogs nor the raising of greyhounds for racing purposes made the land a "farm." See also *Hume* v. *Building Inspector of Westford, ante,* 179.

In support of his argument that the raising of mink made his premises a "farm" the defendant relies on the fact that he held a certificate under G. L. c. 131, § 105A, and hence the mink were "domesticated mink" and he was engaged in "an agricultural pursuit." See fn. 2. The classification of mink and mink raising under § 105A is irrelevant to an interpretation of the zoning ordinance. A "farm" under the ordinance must be determined in the context of the ordinance and not by a statute dealing with a different objective. See *Mioduszewski* v. *Saugus, supra,* 145.

The defendant further contends that § 38–15 is unconstitutional on the ground of vagueness. But the defendant's request for ruling did not raise this question and it cannot be raised here for the first time. We, therefore, do not consider it. *Kagan* v. *Levenson*, 334 Mass. 100, 107. *Lee* v. *Allied Sports Associates, Inc.* 349 Mass. 544, 552.

*Exceptions overruled.*